J-S03025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONI MARIE VANNESS | : | |
| | : | |
| Appellant | : | No. 441 MDA 2023 |

Appeal from the Judgment of Sentence Entered February 16, 2023
In the Court of Common Pleas of Bradford County Criminal Division at
No(s):  CP-08-CR-0000072-2022

BEFORE:  OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: JUNE 11, 2024**

Appellant Roni Marie Vanness appeals from the judgment of sentence imposed after a jury convicted her of theft by unlawful taking and theft of property lost, mislaid, or delivered by mistake.[1]  Appellant challenges both the sufficiency and the weight of the evidence.  Appellant also claims that the trial court erred by excluding Appellant's text messages.  We affirm Appellant's convictions, vacate the restitution component of the sentence, and remand for resentencing.

The trial court summarized the facts of this case as follows:

Appellant worked at a store that sold fireworks.  On June 25, 2021, Victim was in the store to purchase fireworks.  [Victim] accidently left her wallet on the counter and left.  Upon realizing that she had left her wallet at the store, Victim returned to the store to retrieve it.  Appellant told [Victim] and Appellant testified that she thought

---

[1] 18 Pa.C.S. §§ 3921(a) and 3924, respectively.

the wallet belonged to her friend[, Bridget Anderson,] who was [also] in the store [when Victim was there]. . . . Appellant told Victim and testified that she put the wallet in [Anderson's] vehicle. Appellant [sent text messages and] called [Anderson to ask her] to return to the store. Appellant testified that she expected [Anderson] to return to the store. Victim waited for [Anderson] to return to the store, but she did not. Victim then called the Pennsylvania State Police to report a theft.

[Victim's] wallet contained approximately one thousand two hundred and two ($1,202.00) dollars in cash, credit cards and her identification. The identification was in a clear plastic pocket that could be seen when the wallet was opened. Appellant described the inside of the wallet to the Pennsylvania State Trooper that there was cash and cards inside the wallet. The State Trooper recovered the approximately one thousand two hundred and two ($1,202.00) dollars from [Anderson. The cash recovered from Anderson included one older style $100 bill and two older style $50 bills which Victim stated she had been keeping as birthday presents for her son who collects old money].[2] [Victim's] wallet, [credit] cards, and identification [were] never recovered.

* * *

Appellant wished to introduce text messages between Appellant and [Anderson] who she gave the wallet to. The Commonwealth objected. Appellant proffered that she sent a text message to [Anderson] that said "I gave you a wallet that I thought was yours, what did you do with the wallet?" [Anderson] replied, "You know what I did with the wallet, I threw it out and drove off." This court ruled that the statement from [Anderson] was hearsay and could not be admitted. . . . [Anderson] did not testify.

Trial Ct. Op., 6/7/23, at 1-2, 4 (some formatting altered).

We add that Appellant testified that she called Bridget Anderson to ask her about the wallet and to request that she come back to the fireworks store. *See* N.T. Trial, 1/20/23, at 58-59. Victim testified that after she returned to

---

[2] *See* N.T. Trial, 1/20/23, at 24.

the store to ask about her missing wallet, Appellant replied that she gave the wallet to someone else. *See id.* at 22-23. Victim then saw Appellant send text messages on her phone and go into another room to make a call. *See id.* at 23.

On January 20, 2023, a jury convicted Appellant of theft by unlawful taking and theft of property lost, mislaid, or delivered by mistake. On February 16, 2023, the trial court sentenced Appellant to two concurrent terms of two months to twenty-three months and twenty-nine days' imprisonment, imposed $1,000.00 in fines, and ordered Appellant to pay $132.40 in restitution to Victim.

Appellant filed a timely post-sentence motion challenging the sufficiency and weight of the evidence as well as the trial court's exclusion of the text messages at trial, which the trial court denied.

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises four issues on appeal:

1. Whether the evidence at trial was insufficient to sustain a verdict of guilty beyond a reasonable doubt for the charge of theft by unlawful taking-moveable property?

2. Whether the evidence at trial was insufficient to sustain a verdict of guilty beyond a reasonable doubt for the charge of theft of property lost, mislaid, or delivered by mistake?

3. Whether the trial court abused its discretion in failing to find the verdict against the weight of the evidence for the charge of theft of property lost, mislaid, or delivered by mistake since the verdict is so contrary to the evidence as to shock one's sense of justice?

4. Whether the trial court err[]ed as a matter of law and/or abused its discretion in precluding testimony and evidence regarding text messages by and between the Appellant and [Anderson] on the basis of hearsay and even if admissible, its preclusion [was not] harmless error?

Appellant's Brief at 3 (some formatting altered).

**Sufficiency of the Evidence**

Appellant's first two issues are related; therefore, we address them together. Appellant argues that the evidence was insufficient to sustain her convictions for theft by unlawful taking and theft of property lost, mislaid, or delivered by mistake because the Commonwealth failed to prove that Appellant intended to deprive Victim of her property. Appellant's Brief at 10-17. Specifically, Appellant refers to her own testimony that she gave Victim's wallet to her friend Bridget Anderson because Appellant mistakenly believed that the wallet belonged to Anderson. *Id.* at 12-17. Therefore, Appellant contends that the Commonwealth failed to disprove Appellant's mistake of fact, which negated the element of criminal intent. *Id.* at 12, 15-17.

With respect to her conviction for theft of property lost, mislaid, or delivered by mistake, Appellant argues that the evidence was insufficient to prove that she failed to take reasonable measures to restore the property to Victim. *Id.* at 17-19. Appellant contends that she "took reasonable steps to get the property returned upon learning [the identity of] its rightful owner." *Id.* at 18. Specifically, Appellant notes she called and sent text messages to Anderson asking her to return to the store with Victim's wallet, contacted her manager to ask for assistance, and waited with Victim for approximately two

- 4 -

hours for Anderson to return. *Id.* at 17-18. Appellant also observes that she provided information about Anderson to the state trooper, who ultimately recovered the cash from Victim's wallet from Anderson. *Id.* at 18-19.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

Challenges to reliability of evidence go to the weight of the evidence, not sufficiency. *See, e.g.*, *Commonwealth v. Barkman*, 295 A.3d 721, 733 (Pa. Super. 2023) (noting that unlike weight claim, "a sufficiency claim must accept the credibility and reliability of all evidence that supports the verdict" (citation omitted)). Indeed, the "[e]xistence of inconsistencies in the testimony of a witness does not alone render evidence insufficient to support a verdict." *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003)

(citations omitted); *see also Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018) (reiterating that "[v]ariances in testimony . . . go to the credibility of the witnesses and not the sufficiency of the evidence" (citation omitted)).

"Proof of theft by unlawful taking requires three elements: (1) unlawful taking or unlawful control over movable property; (2) movable property belongs to another; and (3) intent to deprive (permanently)." *Commonwealth v. Young*, 35 A.3d 54, 62 (Pa. Super. 2011) (citation omitted and some formatting altered).

The offense of theft of property lost, mislaid, or delivered by mistake is defined as follows:

> A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with the intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it.

18 Pa.C.S. § 3924.

The Commonwealth may prove the intent necessary for theft by unlawful taking or disposition "either by showing an intent to withhold property of another permanently or by showing an intent to dispose of the property so as to make it unlikely that the owner will recover it." *Commonwealth v. Goins*, 867 A.2d 526, 530 (Pa. Super. 2004) (citing 18 Pa.C.S. § 3901). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof. Intent can be proven by direct or circumstantial

evidence; it may be inferred from acts or conduct or from the attendant circumstances." ***Commonwealth v. Padilla-Vargas***, 204 A.3d 971, 975 (Pa. Super. 2019) (citations omitted and formatting altered)).

Section 304 of the Crimes Code provides:

Ignorance or mistake as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if:

(1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required to establish a material element of the offense; or

(2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

18 Pa.C.S. § 304.

This Court has explained:

It is well established that a bona fide, reasonable mistake of fact may, under certain circumstances, negate the element of criminal intent. It is not necessary that the facts be as the actor believed them to be; it is only necessary that he have a bona fide and reasonable belief in the existence of facts which, if they did exist, would render an act innocent. When evidence of a mistake of fact is introduced, the Commonwealth retains the burden of proving the necessary criminal intent beyond a reasonable doubt. In other words, the Commonwealth must prove either the absence of a bona fide, reasonable mistake, or that the mistake alleged would not have negated the intent necessary to prove the crime charged.

***Commonwealth v. Scott***, 73 A.3d 599, 603 (Pa. Super. 2013) (citations omitted and formatting altered).

Here, the trial court explained:

The direct and circumstantial evidence in the light most favorable to the Commonwealth establishes that Appellant took the wallet; she gave it to [Anderson]; when [V]ictim returned to retrieve the

wallet, she gave Appellant time to have the wallet returned; the wallet was not returned; and [V]ictim contacted the Pennsylvania State Police. When the Pennsylvania State Police [trooper] interviewed Appellant[,] she described the inside of the wallet to him stating there was money and cards inside. Victim described her wallet as having a clear opening just inside which would show her driver's license. [Appellant's] friend, Anderson, was contacted by [the] Pennsylvania State Police [trooper]. [Anderson] turned the cash over to him. The wallet, cards and driver's license [were] never returned. This [was] sufficient evidence for the jury to infer that the taking of the wallet was done with intent to commit theft by unlawful taking.

Although, Appellant testified that she thought the wallet was [Anderson's] and that she tried to get [Anderson] to bring the wallet back to the store, the jury was free to believe all, part or none of Appellant's testimony.

\* \* \*

[T]he facts set forth above as presented at trial were sufficient evidence for the jury to infer that the taking of the wallet was done with intent to deprive the owner of the wallet and that Appellant did not take reasonable measure[s] to restore the wallet to [V]ictim. Although Appellant testified that she thought the wallet belonged to [Anderson] and that she tried to get [Anderson] to return [the] wallet, the jury was free to believe all, part or none of Appellant's testimony.

Trial Ct. Op. at 3-4 (some formatting altered).

Based on our review of the record and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the evidence was sufficient to establish that Appellant intended to deprive Victim of her property beyond a reasonable doubt. *See Palmer*, 192 A.3d at 89; *see also Padilla-Vargas*, 204 A.3d at 975; *Goins*, 867 A.2d at 530.

- 8 -

At trial, Victim testified that her identification was in a clear plastic sleeve inside her wallet and anyone who opened the wallet would see it. ***See*** N.T. Trial, 1/20/23, at 18. Trooper Cody Delfino testified that he interviewed Appellant on June 25, 2021, and Appellant told him that she saw "cards and money sticking out of" the wallet and Appellant gave it to Anderson because she believed the wallet belonged to Anderson. ***Id.*** at 34. The following day, Trooper Delfino interviewed Appellant a second time, and Appellant repeated that there was money and cards in the wallet. ***See id.*** at 35. Although Appellant testified that she did not open or look inside the wallet before she gave it to Anderson, the jury was free to believe, all, part, or none of Appellant's testimony. ***See Palmer***, 192 A.3d at 89. Under these facts, it is reasonable to infer that Appellant opened Victim's wallet and saw Victim's identification, credit cards, and money before Appellant gave the wallet to Anderson. Therefore, Appellant had not made a bona fide, reasonable mistake that Anderson was the wallet's owner when Appellant gave the wallet to Anderson. ***See Scott***, 73 A.3d at 603. Appellant's conduct and the attending circumstances support the inference that Appellant intended to deprive Victim of her wallet. ***See Padilla-Vargas***, 204 A.3d at 975; ***Goins***, 867 A.2d at 530.

For these same reasons, we conclude that the evidence was sufficient to establish Appellant failed to take reasonable measures to restore the wallet to Victim with the intent to deprive Victim of the wallet. Appellant's argument only relates to her actions **after** Victim returned to the fireworks store to look

for her wallet. As explained above, the evidence and the reasonable inferences therefrom establish that Appellant knew that Victim, not Anderson, was the owner of the wallet when Appellant gave the wallet to Anderson. Therefore, Appellant failed to take reasonable measures to restore the wallet to Victim when Appellant gave the wallet to Anderson. **See** 18 Pa.C.S. § 3924.

Therefore, in light of the totality of all the evidence presented by the Commonwealth, as verdict winner, we agree with the trial court that there was sufficient evidence to sustain Appellant's convictions for theft by unlawful taking and theft of property lost, mislaid, or delivered by mistake and Appellant is not entitled to relief on these claims.

**Weight of the Evidence**

In her next issue, Appellant argues her conviction for theft of property lost, mislaid, or delivered by mistake was against the weight of the evidence because the uncontradicted evidence at trial established that Appellant took reasonable measures to return Victim's property. Appellant's Brief at 19-23. Appellant claims that even if the jury did not believe her testimony, both Victim and the state trooper also testified about the efforts Appellant made to get Anderson to return Victim's wallet and provided information that led to the state trooper recovering Victim's missing cash. **Id.** at 21-23. Therefore, Appellant concludes that the trial court abused its discretion by denying her challenge to the weight of evidence for theft of property lost, mislaid, or delivered by mistake. **Id.** at 22-23.

In reviewing a weight claim, this Court has explained:

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the lower court; this Court does not review the underlying question of whether the verdict is against the weight of the evidence.

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered).

Here, the trial court addressed Appellant's weight-of-the-evidence claim as follows: "This trial court's sense of justice was not shocked by the findings of the jury in this case. Based upon the facts as set forth above, the jury found Appellant guilty beyond a reasonable doubt. The jury obviously did not find Appellant's testimony credible." Trial Ct. Op. at 5.

Based on our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's weight claim. *See Spence*, 290 A.3d at 311. We note that credibility determinations and the resolution of conflicting evidence are exclusively within the province of the fact-finder. Instantly, the jury as factfinder decided the facts and was entitled to believe all, part, or none of the trial evidence, and this Court cannot substitute its judgment for that of the jury if it is supported by the record. *See id.* On this record we agree with the trial court that there was ample evidence presented to the jury for it to conclude that Appellant failed to take reasonable measures to return Victim's wallet where Appellant saw the wallet's contents, including Victim's identification, and gave the wallet to Anderson. *See* Trial Ct. Op. at 3-5. Therefore, the jury's verdict of guilty in this case does not shock the conscience and sense of justice of a reasonable person; accordingly, Appellant is not entitled to relief on her weight-of-the-evidence claim. *See Spence*, 290 A.3d at 311.

**Text Messages**

Lastly, Appellant argues that the trial court erred by excluding Appellant's text messages with Anderson as hearsay. Appellant's Brief at 23-27. Specifically, Appellant contends that the text messages were not inadmissible hearsay because she was not offering to prove the truth of the matter asserted therein, but instead "to show the reasonable efforts Appellant made to get the wallet returned to its rightful owner." *Id.* at 25. Appellant also claims that the exclusion of the text messages was not harmless error

- 12 -

because they were relevant to Appellant's defense to the charge of theft of property lost, mislaid, or delivered by mistake by showing Appellant's reasonable efforts to get the wallet returned to Victim. *Id.* at 26-27.

In reviewing Appellant's evidentiary claims, we are guided by the following principles:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court[,] and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment[ but, rather, is] the overriding or misapplication of the law, or the exercise of judgment[,] that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused[,] and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted and formatting altered).

Further, it is well settled that "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Bond*, 190 A.3d 664, 667 (Pa. Super. 2018) (citation omitted).

Our Supreme Court has explained: "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay evidence is not admissible except as provided by the Pennsylvania Rules of Evidence, th[e Pennsylvania Supreme] Court, or by statute." *Commonwealth v. McCrae*,

832 A.2d 1026, 1034 (Pa. 2003) (citing Pa.R.E. 801(c), 802). "An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement." *Commonwealth v. Busanet*, 54 A.3d 35, 68 (Pa. 2012).

In *Commonwealth v. Koch*, 39 A.3d 996 (Pa. Super. 2011), the Commonwealth sought to admit text messages from the defendant's phone. *Koch*, 39 A.3d at 1000. The defendant objected on multiple grounds, including that the text messages were hearsay. *Id.* at 1000, 1005. The Commonwealth argued that the text messages were not hearsay because the Commonwealth was not offering the text messages for the truth of the matter asserted. *Id.* at 1005. Instead, the Commonwealth explained that it was offering the text messages to "prove the fact that these things were said on this phone[]" and to show that "these statements were made on the phone that belonged to [the defendant] and that—that these other types of statements then would constitute drug receipts, drug statements, and orders." *Id.* (citations omitted). The trial court overruled the defendant's objection and admitted the text messages. *Id.* at 1000, 1006.

On appeal, this Court reversed, explaining:

The Commonwealth's position that the text messages were not offered for the truth of the matter is unsupported by the record. The only relevance of the text messages and precisely the reason the Commonwealth sought to introduce them was because they demonstrated an intent to deliver. The relevance was not that statements were made, but the content of the statements. The evidentiary value of the text messages depended entirely on the truth of their content. In addition, not only was the evidence improperly admitted, it was then used by the Commonwealth as

- 14 -

the basis for the detective's expert opinion testimony that it indicated a drug exchange, and that the transaction did occur. The mere existence of the text messages themselves was not enough to prove PWID. The jurors had to believe the actual text of the text messages, that is, the matters asserted therein, to grasp what the text messages were offered at trial to prove.

Nor is there any exception to the hearsay rule that would render these text messages admissible. . . .

*Id.* at 1006 (citations omitted).

Here, the trial court explained its decision to exclude Appellant's text messages as follows:

Appellant wished to introduce text messages between Appellant and [Anderson] who she gave the wallet to. The Commonwealth objected. Appellant proffered that she sent a text message to [Anderson] that said "I gave you a wallet that I thought was yours, what did you do with the wallet?" [Anderson] replied, "You know what I did with the wallet, I threw it out and drove off." This court ruled that the statement from [Anderson] was hearsay and could not be admitted. [] Appellant was free to testify to her own text messages to [Anderson]. There was no issue that Appellant could have authenticated her own messages that she claims she sent to [Anderson]. Thus they would have been admissible. The issue is that there is no doubt that the statement made by [Anderson] in any return text message is hearsay. [Anderson] did not testify. Appellant testified that she called [Anderson] and asked [Anderson] to return to the store. Appellant further testified that she believed [Anderson] would return to the store. Appellant would have us believe with the text message and her telephone call to [Anderson] that she made reasonable efforts to have the wallet returned to the owner. [Anderson's] response that she "threw the wallet out" is not an indication of Appellant's state of mind for her intent or reasonable efforts. Any such statement made by [Anderson] does not fall under any other exceptions to the hearsay rule of evidence. *See* Pa.R.Evid. Rules 803, 803.1 and 804.

Trial Ct. Op. at 4-5.

Based on our review of the record, we discern no abuse of discretion or error of law by the trial court in excluding Appellant's text messages as hearsay. *See LeClair*, 236 A.3d at 78. Contrary to Appellant's assertions, it is clear from the record that the only relevance the text messages had to Appellant's case was to prove the truth of the matter asserted therein, *i.e.*, that she asked Anderson to return to the store with the wallet.[3] *See Koch*, 39 A.3d at 1006; *see also Busanet*, 54 A.3d at 68. Therefore, we agree with the trial court that the text messages were inadmissible hearsay. *See McCrae*, 832 A.2d at 1034. Appellant has not argued that any of the exceptions to the hearsay rule apply to the text messages. Accordingly, Appellant is not entitled to relief on this issue.

**Legality of Sentence**

Finally, we must address the legality of the restitution order. *See Commonwealth v. Wright*, 276 A.3d 821, 827 (Pa. Super. 2022) (noting that questions regarding the legality of the sentence questions "are not waivable and may be raised *sua sponte* on direct review by this Court" (citation omitted and formatting altered)). Our Supreme Court stated that "a challenge to the sentencing court's authority to order restitution raises a non-waivable legality of sentencing issue." *Commonwealth v. Weir*, 239 A.3d 25, 37 (Pa. 2020). A challenge to the legality of the sentence "presents a

_____

[3] As stated above, Appellant testified that she had called Anderson to make the same request that Appellant had made in the inadmissible text messages. *See* N.T. Trial, 1/20/23, at 58-59.

- 16 -

pure question of law. As such, our scope of review is plenary and our standard of review *de novo*." ***Wright***, 276 A.3d at 827 (citations omitted and formatting altered).

Section 1106 of the Crimes Code provides in relevant part, "[u]pon conviction for any crime wherein . . . the victim, if an individual, suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor." 18 Pa.C.S. § 1106(a)(2).

Section 1106 also provides:

> **(c) Mandatory restitution.**—
>
> > (1) The court shall order full restitution:
> >
> > > (i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. . . .
> >
> > > \* \* \*
> >
> > (2) **At the time of sentencing the court shall specify the amount and method of restitution**. In determining the amount and method of restitution, the court:
> >
> > > (i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney . . . and such other matters as it deems appropriate.
> >
> > > (ii) **May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.**

18 Pa.C.S. § 1106(c)(1)(i), (2)(i)-(ii) (emphases added).

This Court has recently stated that

> restitution must properly be included in a sentence. The Superior Court held these requirements provide the defendant with certainty as to his sentence, and at the same time allow for subsequent modification if necessary. Failure to comply with Section 1106(c)(2) results in an illegal sentence.

*Commonwealth v. Royal*, 312 A.3d 317, 325 (Pa. Super. 2024) (citations omitted and formatting altered).

In *Royal*, the defendant was convicted of six counts of retail theft. *Royal*, 312 A.3d at 321. At sentencing, the trial court ordered the defendant to pay $4,568.95 in restitution. *Id.* at 325-26. "However, the trial court did not specify the **method** of restitution at the sentencing hearing, instead including it in the sentencing order." *Id.* at 326 (emphasis in original). The *Royal* Court vacated the judgment of sentence, concluding that "the trial court's failure to specify the method of payment at the sentencing hearing rendered that portion of [the defendant's] sentence illegal[]" and remanded for resentencing for the trial court to reimpose restitution and specify, on the record, the method of payment. *Id.*

Here, on this record, the trial court properly ordered Appellant to pay $132.40 in restitution to Victim. However, the trial court did not specify at the sentencing hearing nor in its written sentencing order the **method** of payment for the restitution, whether it be in a lump sum, by monthly installments, or according to such other schedule as the trial court deemed just. *See* N.T. Sentencing, 2/16/23, at 4-6; Sentencing Order, 2/16/23.

- 18 -

Therefore, we are constrained to conclude that the trial court's restitution order is an illegal sentence because it did not specify the method of payment at the sentencing hearing as required by 18 Pa.C.S. § 1106(c)(2), nor in the sentencing order.[4] *See Royal*, 312 A.3d at 326.

For these reasons, we affirm Appellant's convictions, affirm the judgment of sentence in part, and vacate the judgment of sentence as to restitution only. We remand for resentencing limited to the reimposition of $132.40 in restitution and an on-the-record specification of the method of payment.

Judgment of sentence affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

_____

[4] "Pennsylvania appellate courts apply the law in effect at the time of the appellate decision. This means that we adhere to the principle that, a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final." *Commonwealth v. Chesney*, 196 A.3d 253, 257 (Pa. Super. 2018) (citations omitted and formatting altered).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 6/11/2024