J-S03012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARKAL HAYNES | : | |
| | : | |
| Appellant | : | No. 348 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 1, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0006125-2021

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:               **FILED: June 4, 2025**

Markal Haynes appeals from the judgment of sentence imposed after a jury found him guilty of multiple charges arising from Haynes' sexual abuse of a minor, H.K.  Haynes challenges the trial court's admission of other alleged sexual assaults into evidence and the discretionary aspects of his sentence.  Additionally, Haynes' counsel asked to withdraw from representation and filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967).  Upon review, we grant counsel's petition and affirm in part and vacate in part the judgment of sentence.

This case arises from a series of incidents which took place over approximately two (2) years, from December of 2018 through December 2020.

> During this time H.K. lived with her paternal grandmother and had visitation with her mother, Alisha Kerby, virtually every weekend and most holidays.  [Haynes], who began living with Kerby in

2017, was present during these visitations along with S.K., Kerby's daughter and H.K.'s younger half-sibling. It was during some of these visitations that [Haynes] sexually abused H.K. H.K. explained that she first met [Haynes] when she was six (6) or seven (7) years old. As visits continued, and H.K. was around nine (9) or ten (10) years old, she and S.K. enjoyed playing video games together. [H.K. played a lot of video games]. They needed adult permission to use the gaming system and because Kerby often took naps during the day, H.K. would have to ask [Haynes]. [Haynes] conditioned his permission on H.K. doing "something" for him, which she explained was either her performing oral sex on him or [Haynes] inserting his penis into her anus . . . . [I]n the commission of these acts, [Haynes] removed H.K.'s clothes as well as his own, and [] S.K. was always present during the assaults. Additionally, H.K. also witnessed [Haynes] sexually assault S.K. . . . she observed his penis against S.K.'s vagina and buttock. The abuse against H.K. ended when she was in fifth grade after Kerby became pregnant by [Haynes]. Sometime in 2021 H.K. disclosed the incidents to Lori Giesy, the mother of one of H.K.'s friends and a person who served as a maternal figure to H.K.

[A week before H.K.'s disclosure to Giesy, H.K. threatened to hit Kerby because she was upset that she was pregnant [with Haynes' baby] . . . . [Haynes] intervened, physically disciplined H.K., and stopped "doing stuff" for her because he felt H.K. was trying to kill the baby.].

. . . [Haynes] also engaged in similar abuse against his minor niece, S.L. When this occurred, [Haynes] was living with his sister, S.L.'s mother, along with other household members. S.L. recalled being in either first or second grade when [Haynes] penetrated her vagina with his penis. S.L. described that this happened multiple times in the house when [Haynes] was alone with her. During this same time frame, her similarly aged cousin "F" occasionally visited on the weekends. It was during some of these visits that S.L. witnessed [Haynes'] penis touch ["F's"] vagina.

Trial Court Opinion, 7/9/24, at 4-6 (citations omitted). Haynes was arrested and charged with multiple offenses.

On April 20, 2022, in anticipation of trial, the Commonwealth filed a motion *in limine*/notice of intention to introduce evidence of prior bad acts to show Haynes engaged in a common plan or scheme when he sexually abused H.K. and other female minors. Specifically, the Commonwealth sought to introduce the testimony of S.L. which would show that Haynes also sexually assaulted her and another female minor. Haynes objected. After a hearing on the issue, which included an *in camera* review of S.L.'s forensic interview, the trial court entered an order permitting the introduction of Haynes' other bad acts into evidence at trial.

On May 6, 2022, a jury found Haynes guilty of: two counts of involuntary deviate sexual intercourse of a child under 13 ("IDSI") and one count each of: statutory sexual assault, indecent assault, unlawful contact with a minor, and corruption of minors.[1]

On August 1, 2022, the trial court sentenced Haynes. Haynes filed a post-sentence motion raising a weight of the evidence claim. After counsel failed to file a supplemental motion, which the court had allowed, the court denied Haynes' post-sentence motion. Haynes did not file an appeal at that time.

On November 1, 2022, the court issued a corrected sentencing order which provided: Count 1 – IDSI, 10 to 20 years' incarceration followed by 5 years' probation; Count 2 –IDSI, 10 to 20 years' incarceration followed by 5

---

[1] 18 Pa.C.S.A. §§ 3123(b), 3122.1(a)(2), 3123(b), 3126(a)(7), 6318(a)(1), and 6301(a)(1).

years' probation to run concurrently to the sentence at Count 1; Count 3 – statutory sexual assault, 1 to 2 years' incarceration to run concurrently with the sentences at Counts 1 and 2; Count 4 – indecent assault, no further penalty; Count 5 – unlawful contact with a minor, 6 to 12 years' incarceration to run consecutively to the sentences at Counts 1 and 2; Count 6—corruption of minors, 1 to 2 years' incarceration to run consecutively to Counts 1, 2 and 5. Thus, Haynes received an aggregate sentence of 17 to 34 years of incarceration followed by 5 years' probation. Haynes' sentence also included, *inter alia*, a condition that Haynes have no contact with H.K.

On November 1, 2023, following an amended petition pursuant to the Post Conviction Relief Act[2] ("PCRA"), the court, upon concession of the Commonwealth, reinstated Haynes' post-sentence and direct appeal rights. New counsel then filed a new post-sentence motion and an amended post-sentence motion, which the court denied.

Haynes filed this timely appeal. He and the trial court complied with Appellate Rule 1925. Counsel filed an ***Anders*** brief with this Court and a petition to withdraw.[3] Haynes did not retain independent counsel or file a *pro se* response to the ***Anders*** brief.

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

[3] We note that when counsel intends to file an ***Anders*** brief and ask this Court to withdraw, counsel should file a statement pursuant to Rule 1925(c)(4) rather than Rule 1925(b).

- 4 -

When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw. **See Commonwealth v. Garang**, 9 A.3d 237, 240 (Pa. Super. 2010). Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw from representation, counsel must do the following:

(1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se*, or raise any additional points [the defendant] deems worthy of this Court's attention.

**Commonwealth v. Edwards**, 906 A.2d 1225, 1227 (Pa. Super. 2006) (citation omitted). In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Once counsel has satisfied the **Anders** requirements, it is then this Court's responsibility "to conduct a simple review

of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018).

Here, counsel filed both an ***Anders*** brief and a petition for leave to withdraw. Further, the ***Anders*** brief substantially comports with the requirements set forth by our Supreme Court in ***Santiago***. Additionally, counsel sent a letter to Haynes indicating counsel's intention to seek permission to withdraw and advising Haynes of his right to proceed *pro se* or retain new counsel and file additional points he deems worthy of the Court's consideration. Accordingly, as counsel has complied with the procedural requirements for withdrawing from representation, we will review the issues raised by counsel to determine whether Haynes' appeal is wholly frivolous.

In the ***Anders*** brief, counsel indicates that Haynes wishes to raise the following two issues which we have reordered for ease of disposition:

> 1. Whether the [trial] court erred in allowing testimony of 404(b) evidence to be admitted as it was more prejudicial than probative?
>
> 2. Whether the [trial] court abused its discretion by imposing an excessive sentence?

***Anders*** Brief at 6.

In his first issue, Haynes claims that the trial court erred when it allowed the Commonwealth to introduce evidence of Haynes' sexual abuse of other female minors. Specifically, he argues that the court erred in concluding that the evidence could be admitted properly to show that there was a common

- 6 -

scheme or plan. Haynes maintains that the prejudice that he suffered far outweighed the probative value of that evidence. Therefore, according to Haynes, he is entitled to a new trial. ***Anders*** Brief at 18.

"It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." ***Commonwealth v. Hoover***, 107 A.3d 723, 729 (Pa. 2014). Indeed:

> "When a trial court comes to a conclusion through the exercise of its discretion, there is a heavy burden on the appellant to show that this discretion has been abused." ***Commonwealth v. Eichinger***, 591 Pa. 1, 915 A.2d 1122, 1140 (2007) (citation omitted). An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power. ***Id.***

***Commonwealth v. Gill***, 206 A.3d 459, 466 (Pa. 2019). A determination that a trial court abused its discretion in making an evidentiary ruling "may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Hoover***, 107 A.3d at 729 (internal quotation marks omitted).

Pennsylvania Rule of Evidence 404(b) provides:

**(b) Other Crimes, Wrongs, or Acts.**

(1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1) and (2).  Thus we, have explained:

evidence of other crimes or acts may be admitted if such evidence proves "a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others."  Leonard Packel and Anne Bowen Poulin, Pennsylvania Evidence § 404–9(a) (2d Ed.1999).  A common scheme may be relevant to establish any element of a crime, where intent may be shown through a pattern of similar acts.  **See Commonwealth v. Strong**, 825 A.2d 658, 665 (Pa. Super. 2003).

The degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under this exception.  **See Commonwealth v. Luktisch**, 680 A.2d 877, 879 (Pa. 1996) (finding testimony of prior sexual abuse upon other children in the same family relevant to demonstrate a common scheme); **Commonwealth v. Smith**, 635 A.2d 1086, 1089–1090 (Pa. 1993) (holding evidence of prior crimes was admissible to show a recurring sequence of acts by defendant).

Furthermore, the importance of the intervening time period "is inversely proportional to the similarity of the crimes in question." **Commonwealth v. Miller**, 664 A.2d 1310, 1319 (Pa. 1995).

**Commonwealth v. Saez**, 225 A.3d 169 (Pa. Super. 2019) (some citations omitted) (quoting **Commonwealth v. Einhorn**, 911 A.2d 960, 967 (Pa. Super. 2006)).

Here, the trial court found that the evidence of Haynes' sexual abuse of other female minors served to establish a common plan or scheme, and the

probative value of this evidence outweighed he potential for unfair prejudice.

The court explained:

> [T]he [c]ourt conducted an *in camera* review of the forensic interview of S.L. The similarities in this case were significant. H.K. and the other involved minors were all prepubescent girls who lived in a household with [Haynes]. A household wherein [Haynes] was an adult in an authoritative position, one familial, and the other by virtue of his relationship with the minors' mother. The [c]ourt gave significant weight to the fact that H.K. and S.L. both alleged [Haynes] committed the acts in front of other minors, and that [he] committed sexual acts against those same minors in the presence of H.K. and S.L.

Trial Court Opinion, 7/9/24, at 11 (citation omitted). The court acknowledged that:

> the nature of the sexual acts were dissimilar [as Haynes maintained] to some degree but similarities in gender and age, time frame of the abuse, along with the uniqueness of the sexual acts being committed in the presence of the other minors, were highly significant factors, such that any differences in the acts themselves did not diminish or outweigh the probative value.

*Id.*

The trial court recognized that Haynes would suffer some prejudice by this evidence. To mitigate this effect, the court instructed the jury regarding the limited purpose of this evidence immediately after S.L.'s testimony and also during the final charge. Trial Court Opinion, 7/9/24, at 12. The court stated:

> I want to -- because you just heard testimony from [S.L.] -- explain to you now that that testimony accused [] Haynes of improper conduct for which he is not on trial. And so I'm speaking of the testimony that just occurred from the witness stand from [S.L.].

This evidence is being placed before you for a limited purpose. And that is for the purpose of showing whether or not there was a common scheme in the way that these incidents occurred. That is the only purpose for which you can consider that evidence. You cannot consider it for any other -- in any other way other than for the purpose -- the limited purpose of whether or not it establishes a common scheme in the way that these incidents proceeded. You must not regard the evidence as showing that [] Haynes is a bad person or a person of bad character, or that it shows that he has criminal tendencies from which you may be inclined to infer guilt in this case.

So it comes before you under the law for a limited purpose. And that is for the purpose of considering whether or not there is commonalties in that evidence that you may then consider in evaluating the testimony of other witnesses.

N.T., 5/5/22, at 99-100.

Based upon the foregoing, we conclude that the trial court did not abuse its discretion in permitting evidence of Haynes' abuse of other female minors to establish a common scheme or plan. The trial court determined that the probative value of this evidence outweighed the potential for unfair prejudice to Haynes. This conclusion was not manifestly unreasonable or the product of bias, ill will, or prejudice or a misapplication of the law. Thus, we agree Haynes' first issues is frivolous.

In his second issue, Haynes challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). This Court has explained that, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]pellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013)).

Haynes filed his appeal timely and preserved his issues. However, upon review of the record, we observe that Haynes did not include a Rule 2119(f) statement in his brief. Nevertheless, we may ignore such defect in cases where counsel seeks leave to withdraw. *See Commonwealth v. Zeigler*, 112 A.3d 656, 661(Pa. Super. 2015) (noting where counsel has filed an *Anders* brief, this court has reviewed discretionary sentencing claim, even absent a separate Rule 2119(f) statement). Accordingly, we must determine whether Haynes raises a substantial question.

Here, Haynes only claims that the trial court imposed an excessive sentence, and therefore, abused its discretion. *Anders* Brief at 14. Bald claims of excessiveness do not constitute a substantial question. *Moury*, 992 A.2d at 170. Instead, "an appellant must articulate the reasons the [] court's actions violated the sentencing code." *Id.* Because Haynes did not specify how the trial court violated the sentencing code, we conclude that he did not raise a substantial question.

Even if Haynes raised a substantial question and we were to reach the merits of his sentencing claim, we would conclude that the trial court did not abuse its discretion and that this issue is frivolous. Our standard of review of a sentencing claim is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). Where there is an abuse of discretion, the sentence must be vacated. *See Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007).

The Sentencing Code requires that when sentencing a defendant, the trial court must first consider the sentencing guidelines. 42 Pa.C.S.A. § 9721(b). The court also must consider "the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Finally, before imposing a sentence of total confinement, the court must consider "the nature and circumstances of the crime[,] and the history, character, and condition of the defendant." 42 Pa.C.S.A. § 9725.

Upon review of the record, we observe that, at sentencing, the trial court set forth the guidelines for each offense, based on Haynes' zero prior record

score and the applicable offense gravity scores ("OGS"). N.T., 8/1/22, at 11-13. Notably, the OGS for IDSI with a child was 14 (versus 12 for IDSI). The guidelines recommended a minimum standard range sentence of 6 to SL (statutory limit, being 20 years which is the longest minimum sentence for this offense, *i.e.*, not more than half of the statutory maximum of 40 years) plus/minus 12 months. Although the guidelines provided for a lesser minimum sentence than Haynes received, here, the trial court was limited in its ability to apply the sentencing guidelines for Haynes' IDSI convictions. The Commonwealth issued a notice of intent to seek the mandatory minimum sentence on each count of IDSI of 10 to 20 years' incarceration. Once the Commonwealth invoked the mandatory minimum sentence, the trial court was obligated to impose that sentence and could not sentence Haynes pursuant to the guidelines. Thus, more than half of Haynes' sentence was attributable to the IDSI convictions over which the court had no discretion. Notwithstanding this, as the Commonwealth emphasized, Haynes' 10 to 20 mandatory minimum sentence was not in the aggravated range or even at the top of the standard range under the guidelines. N.T., 8/1/22, at 14. Furthermore, as the trial court noted, the statutory maximum for a single count of IDSI was 40 years. *Id.* at 12; *see* 18 Pa.C.S.A. § 3123(d)(1).

Moreover, and significantly, although the trial court still retained the ability to impose the IDSI sentences consecutively or concurrently, the trial court did not impose the mandatory minimum sentences consecutively, which would have resulted in an aggregate sentence of 20 to 40 years. The trial

court did so despite the Commonwealth's request that the court run the sentences consecutively. N.T., 8/1/22, at 9.

However, the trial court balanced these sentences by imposing Haynes' sentences for unlawful contact with a minor and corruption of minors consecutive to the sentences for IDSI. The sentencing guidelines recommended a minimum standard range sentence of 6 to 10 years' incarceration and 4 to 12 month's incarceration for unlawful contact with a minor and corruption of minors, respectively. The court sentenced Haynes to a minimum of 6 years for corruption of minors and 12 months for unlawful contact with a minor. Notably, both sentences were within the standard range. Where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Cruz–Centeno*, 668 A.2d 536 (Pa. Super. 1995). And, although the trial court imposed these sentences consecutive to the IDSI sentences, this Court has long held that a sentencing court has broad discretion regarding whether a defendant serves sentences consecutively or concurrently. *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014). Furthermore, a defendant convicted of multiple offenses is not entitled to a "volume discount." *See Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. 1995).

Additionally, our review of the record discloses that the trial court did not base its sentence only on the nature and facts of the case and seriousness of the crimes; the court considered other relevant factors including Haynes'

history, character, and rehabilitative needs. The trial court had a presentence investigation report ("PSI"), which it reviewed. N.T., 8/1/23, at 4, 16. It is well settled that where a sentencing court is informed by a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Ventura*, 975 A.2d at 1135. The court also had a sentencing memorandum from both parties, a statement from H.K., and several statements and letters in support of Haynes, all of which it reviewed and considered. N.T., 8/1/23, at 4, 17.

The court heard from Haynes' counsel who argued that Haynes had no prior record score and was very young. As such, he could be rehabilitated and was amenable to treatment; he has support from his family and the community. Counsel also noted that Haynes, himself, was a victim of sexual assault as a young child. *Id.* at 5, 7, 10-11. In allocution, Haynes told the court he would follow the rules imposed on him and would not have any contact with H.K. *Id.* at 16.

Before sentencing Haynes, the trial court explained:

[The jury found] that you engaged in this pervasive pattern of sexually abusing [H.K.] over the course of many months when you were in a position of trust and authority over her based on the position that you were [held] in that family structure.

That is [] probably one of the most egregious breaches of trust that can exist, and the damage that has occurred to her I'm sure is incalculable and she'll have to deal with and address [that damage] long after she reaches the age of majority I'm sure.

- 15 -

The Commonwealth asked for a particularly lengthy period of incarceration [29 to 56 years]. The defense is asking that the [c]ourt essentially impose what would be the statutory mandatory minimum in this case [10 to 20 years].

The [c]ourt has reviewed all of the information, has considered the impact on the victim, the seriousness of theses offenses. It's considered the fact that [] Haynes has no prior record, his youth. It's considered any rehabilitative needs . . . put forward.

There is no question there is a need for total confinement in this case that is consistent with the gravity of the offense, the need to protect the public.

I can't quite agree with the Commonwealth, particularly in light of where they may have been willing to go at one point in this case, that the sentence that they are asking for, running that many sentence consecutive for that period or length of incarceration, is necessary to vindicate the offenses.

However, I cannot agree that simply sentencing on the one mandatory minimum sentence is sufficient, and so the [c]ourt is going to structure and fashion a sentence that I believe reflects the seriousness of this offense, the need for total confinement, and this is based on what the jury found during the course of the trial.

N.T., 8/1/23, at 20. This explanation clearly shows that the court considered all the relevant sentencing factors and weighed them accordingly. On appeal, "[w]e cannot re-weigh the sentencing factors and impose our judgment in place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009). We therefore would conclude that the trial court did not abuse its discretion when it sentenced Haynes.

For the foregoing reasons, we conclude that Haynes' claims on appeal are frivolous. However, our independent review in accordance with

*Demptster* discloses a potential additional, non-frivolous issue which counsel may have overlooked.

We note that questions regarding the legality of a sentence "are not waivable and may be raised *sua sponte* on direct review by this Court." **Commonwealth v. Wright**, 276 A.3d 821, 827 (Pa. Super. 2022) (citation omitted and formatting altered). Review of the legality of a sentence "presents a pure question of law. As such, our scope of review is plenary and our standard of review de novo." **Id.** (citations omitted and formatting altered).

"If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." **Commonwealth v. Warunek**, 279 A.3d 52, 54 (Pa. Super. 2022) (citation omitted and some formatting altered).

When a trial court imposes a maximum sentence of imprisonment of two or more years, the Pennsylvania Board of Probation and Parole ("PBPP") has exclusive authority over the terms of the defendant's parole. **See** 61 Pa.C.S.A. § 6132; **see also Commonwealth v. Coulverson**, 34 A.3d 135, 141 (Pa. Super. 2011). Thus, any condition that a sentencing court imposes on a defendant's state parole is purely advisory. **Commonwealth v. Mears**, 972 A.2d 1210, 1211 (Pa. Super. 2009). Further, the authority to impose a no-contact provision as a special condition of a defendant's state incarceration rests with the Pennsylvania Department of Corrections ("DOC"). **Commonwealth v. Merced**, 308 A.3d 1277, 1284 (Pa. Super. 2024), *rearg.*

*denied* (Mar. 27, 2024), appeal denied, 326 A.3d 394 (Pa. 2024). Therefore, trial courts do not have statutory authority to impose conditions on a state sentence, and "'any condition the sentencing court purport[s] to impose on [a defendant's] state parole is advisory only.'" **Id.** (quoting **Coulverson**, 34 A.3d at 141-42 (citation omitted)); **see also** 61 Pa.C.S.A. § 6134(b)(1) and (2).

Here, Haynes' sentence included a condition which prohibited him from contacting H.K.[4] However, based on the foregoing, the trial court lacked authority to impose the no-contact condition as part of Haynes' state sentence and parole. Because Haynes' maximum sentence was 34 years, the trial court lacked the authority to impose a no-contact condition as part of Haynes' sentence. The authority to set this type of condition lies solely with the Pennsylvania DOC and PBPP. Although the trial court was permitted to recommend that the no-contact condition be implemented, it could not impose it as a matter of law. Accordingly, we vacate Haynes' sentence solely as it imposes the no-contact condition and note that the trial court recommends this condition to the Pennsylvania DOC and PBPP during his state sentence and parole. We affirm the judgment of sentence in all other respects.

_____

[4] At sentencing, the Commonwealth asked that the trial court impose a no-contact condition as to H.K. and S.L. The court refused to impose this condition as to S.L. because she was not a victim in this case. The court agreed to impose a no contact condition as to H.K. However, there was some discussion regarding the extent to which the court could do so. Based on this and the court's sentencing order, it appears that the court imposed the no-contact condition as part of Haynes' state sentence, parole, and probation.

Judgment of sentence affirmed in part and vacated in part. Petition to withdraw granted. Jurisdiction relinquished.

Judge Sullivan joins; Judge Beck issues a Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/4/2025