J-S36010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　:　　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
JAVON RASSOUL CASON　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　Appellant　　　　　　:　　No. 1161 WDA 2024

Appeal from the Judgment of Sentence Entered May 1, 2024
In the Court of Common Pleas of Erie County
Criminal Division at No(s):  CP-25-CR-0001343-2023

BEFORE:　PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:　　　　　**FILED: DECEMBER 1, 2025**

Javon Rassoul Cason appeals from the judgment of sentence imposed following his convictions of second-degree murder, conspiracy to commit homicide and conspiracy to commit robbery.[1] Cason argues his sentence of life imprisonment for second-degree murder is unconstitutional, and challenges both the sufficiency and weight of the evidence. After careful review, we affirm.

On November 17, 2021, co-defendant Aiyanna Atkinson complained to her cousin Darryl Gates, another co-defendant, about her belief that Tariq Sheppard, an ex-boyfriend, broke into Atkinson's friend's house, damaged her

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(b), 903(a), and 903(a) respectively.

iPad and then stole Atkinson's iPhone. This alleged break-in occurred two weeks prior to November 17, 2021. Atkinson never went to police regarding these allegations. At the time she told her cousin, she was frustrated and wanted her phone and iPad back, by any means necessary. Atkinson told Gates she planned on confronting Sheppard and asked him to come with her. Initially, Gates told her that if there were going to be fighting, he wanted nothing to do with it. Atkinson told him that was fine, and called her other cousin, Cason, for his assistance.

Cason and Atkinson spoke through a video call, while Gates was still in the room with Atkinson. When Cason told Atkinson to come over to his house to discuss the situation further, Gates asked if he could come along. Cason agreed, and both Atkinson and Gates drove to Cason's house. On the way to Cason's house, Atkinson pointed out where Sheppard lived.

While at Cason's house, they discussed their plans. Atkinson told them, "I just want my things back. I want him to pay for what he did, like basically pay for what he broke. And if he doesn't have it, like—and I honestly said I don't even care if you guys have to rob him." N.T. Trial, 3/6/24, at 123-24. In response to that, Cason asked her what was in Sheppard's house.

After this discussion, Gates and Cason started talking about a rifle that was in the room. Atkinson briefly left the room. When Atkinson returned, she saw Cason hand Gates a handgun. Gates asked Cason if the serial numbers

were still on the handgun. Atkinson then drove Gates and Cason to Sheppard's house.

On the way to Sheppard's house, Atkinson was told to stay in the car when they arrived at Sheppard's home and let Cason and Gates handle it. She agreed, parked and remained in her car while Cason and Gates went to Sheppard's house. As can be seen on the surveillance video, after a few minutes of Cason knocking on Sheppard's door with no answer, Cason kicked Sheppard's door. Someone finally answered the door and Sheppard stepped outside on his porch and Cason stepped down off the steps.

Sheppard testified and explained that initially, it was only Cason outside his house. Cason asked him if he broke into and stole her iPad or laptop. The conversation with Cason lasted only a few minutes but Sheppard did not feel comfortable based upon the tone of Cason's voice. Cason asked Sheppard to step off the porch and he refused. Then Gates stepped out from a hiding spot around the corner and Sheppard felt that he was "probably in danger." N.T. Trial, 3/7/24, at 124. Sheppard believed Gates had a firearm in his pocket based upon the way that Gates was holding his hands in his hoody pocket. Ultimately, Sheppard denied breaking in, and taking, or breaking any of Atkinson's property, and Cason and Gates walked away.

They returned to Atkinson's car and told her that Sheppard denied everything. Atkinson was not pleased, so they decided to go back to confront Sheppard again. Before they could, they saw Sheppard driving away with his

current girlfriend, Rhonda Glover, in the passenger seat. They believed Sheppard was leaving because he was lying to them. They decided to follow Sheppard.

Sheppard realized he was being followed by Atkinson and started to drive at a high rate of speed. Atkinson kept up with him. Sheppard, in an attempt to ditch Atkinson, turned the wrong way down a one-way street. Atkinson continued to follow. Glover told Sheppard to go to her sister's house and Sheppard complied. Once Sheppard parked in front of Glover's sister's house, Gates jumped out of Atkinson's moving car and opened fire. Glover was killed when a bullet struck her in the head. Sheppard was able to avoid getting hit by running into Glover's sister's house. Gates jumped back into Atkinson's car and they fled the scene.

As they fled, Cason gave Atkinson directions and told her to turn off the headlights on her car. Atkinson complied. Atkinson heard Cason tell Gates "to give me that." *Id.* at 153. Atkinson believed Cason was asking for the firearm. Cason then told Atkinson to stop the car, and he got out alone. Cason was out of the car for less than a minute before he returned. At that time, he told Atkinson to take him home. After they arrived at Cason's house, Atkinson asked what she was going to do now. Cason replied "I don't know what you going to do but don't bring my name up into it." *Id.* at 157. Gates then helped Atkinson remove her vanity license plate and replace it with the old license plate. Cason allowed Atkinson to leave her vanity license plate at his house.

Atkinson decided to go to her grandparents' house and dropped off Gates at a store on her way. That night, Atkinson was arrested at her grandparents' house.

Atkinson, Gates, and Cason were all charged with the murder of Glover. Prior to trial, Atkinson pled guilty to third-degree murder and agreed to testify against Gates and Cason. Gates and Cason were tried at a joint jury trial held March 4, 2024, through March 12, 2024. Cason was convicted of the charges noted above and sentenced to life in prison without parole for his conviction of second-degree murder.

Cason filed a timely post-sentence motion. After oral argument, the court denied the motion. Cason timely appealed and complied with the court's order to file a Rule 1925(b) statement, and the court filed a Rule 1925(a) opinion on November 18, 2024. *See* Pa.R.A.P. 1925(a), (b).

Cason now raises the following four claims for our review:

[1]. Is [Cason's] mandatory sentence of life imprisonment with no possibility of parole unconstitutional under the Eighth Amendment to the U.S. Constitution, where [Cason] was convicted of second-degree murder in which he did not kill or intend to kill and therefore had categorically-diminished culpability?

[2]. Is [Cason's] mandatory sentence of life imprisonment with no possibility of parole unconstitutional under Article I, § 13 of the Constitution of Pennsylvania, where [Cason] was convicted of second-degree murder in which he did not kill or intend to kill and therefore had categorically-diminished culpability, and where Article I § 13 should provide better protections in those circumstances than the Eighth Amendment to the U.S. Constitution?

[3]. Was the evidence sufficient to support finding [Cason] guilty beyond a reasonable doubt on the charges of murder of the second degree, conspiracy – criminal homicide, and conspiracy—robbery—threat[en] immed[iate] serious injury?

[4]. Did the trial court err and abuse its discretion by affirming the jury verdict of guilty [as it was] against the weight of the evidence, where the Commonwealth's key witness, Aiyanna Atkinson, was inconsistent and lack[ed] credibility?

Appellant's Brief, at 7-8 (citations, unnecessary capitalization, trial court answers, and suggested answers omitted).

Before we turn to the merits of Cason's first two claims, we must address whether they are waived as the Commonwealth alleges. *See* Appellee's Brief, at 2-3. The Commonwealth notes that Cason did not raise the constitutionality of his sentence with the trial court and asserts the first two issues are waived on this basis. *See id.* We disagree.

Some "issues regarding the constitutionality of a statute can be waived." ***Commonwealth v. Lawrence***, 99 A.3d 116, 122 (Pa. Super. 2014) (brackets, internal quotation marks, and citation omitted). However, we have held "that claims pertaining to the Eighth Amendment's Cruel and Unusual Punishment Clause also pertain to the legality of the sentence and cannot be waived." *Id.* (citation omitted).

Here, Cason challenges the statute as unconstitutional under both the Eighth Amendment and Article I, Section 13 of the Pennsylvania Constitution, our State's version of the cruel and unusual punishment clause. ***See***

Appellant's Brief, at 21, 40. As such, his challenge pertains to the legality of the sentence imposed and cannot be waived.

We therefore turn to the merits of Cason's arguments. We address Cason's first two claims together because

> Pennsylvania courts have repeatedly and unanimously held that the Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendments to the United States Constitution and that the Pennsylvania Constitution affords no broader protection against excessive sentences than that provided by the Eighth Amendment to the United States Constitution.

***Commonwealth v. Elia***, 83 A.3d 254, 267 (Pa. Super. 2013) (brackets, quotation marks, and citations omitted).

Cason's claims "implicate[] the legality of his sentence, [and therefore,] the claim[s] present[] a pure question of law. As such, our scope of review is plenary and our standard of review is de novo." ***Commonwealth v. Wright***, 276 A.3d 821, 827 (Pa. Super. 2022) (internal quotation marks and citations omitted).

Cason acknowledges this Court held that the sentence of life imprisonment for second-degree murder is constitutional in ***Commonwealth v. Rivera***, 238 A.3d 482 (Pa. Super. 2020), but asserts ***Rivera*** was wrongly decided. ***See*** Appellant's Brief, at 22. He claims ***Rivera*** used an "outdated framework regarding the analysis for proportionality of sentence[.]" ***Id.*** We disagree.

Cason's exact issues were recently addressed in **Commonwealth v. Lee**, 301 A.3d 899 (Pa. Super. filed June 13, 2023) (non-precedential decision)[2], including whether **Rivera** used an outdated framework for its decision.

Cason makes a parallel argument as the appellant did in **Lee**[3] and we therefore rely substantially on this Court's decision in that case. **See** Appellant's Brief, at 21 ("Appellant borrows from the current argument pending [in **Lee**].") He argues "a recent string of federal case law has made it clear that courts should assess whether a sentence of life without the possibility of parole is unconstitutional when applied to a certain category of offenses or offenders under the Court's categorical approach to the Eighth Amendment sentencing challenges." **Id.** at 21-22.

In **Lee** this Court explained:

> According to Appellant, **Rivera**'s analysis was incorrect because, in **Graham v. Florida**, 560 U.S. 48 (2010), **Miller v. Alabama**, 567 U.S. 460 (2012), and **Montgomery v. Louisiana**, 577 U.S. 190 (2016), the United States Supreme Court "instructed that life-without-parole sentences are sufficiently similar to the death penalty that they may be unconstitutional when applied to people with categorically-diminished culpability based on their offense or characteristics." Appellant's Brief at 15.

---

[2] Pursuant to Pa.R.A.P. 126(b), we may rely on unpublished memorandum issued after May 1, 2019, for their persuasive value.

[3] We recognize that our Supreme Court accepted allocatur as to these issues. **See Commonwealth v. Lee**, 313 A.3d 452 (Pa. 2024). However, because the Pennsylvania Supreme Court has not yet issued a decision in **Lee**, this Court's decisions in **Lee** and **Rivera** remain binding on this Court. **See Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006).

Appellant is entitled to no relief. At the outset, the Eighth Amendment does not require uniformity in penological approaches across the States. Hence, Pennsylvania's mandatory scheme of punishment for second-degree murder does not run afoul of the Constitution simply because it differs from that of other States. … Appellant cites no decision which has ever concluded that an individual, charged with homicide and who has attained the age of majority, may be viewed as having categorically-diminished culpability for purposes of considering whether the Eighth Amendment proscribes the imposition of a life-without-parole sentence.

Appellant questions the precedential value of our prior decision in *Rivera*. However, this Court decided *Rivera* in 2020 — which is after *Graham*, *Miller*, and *Montgomery* were decided. Thus, in the absence of intervening precedent from a higher court, we are bound by *Rivera*, regardless of whether Appellant believes *Rivera* was wrongly decided . . . .

We also note that *Graham*, *Miller*, and *Montgomery* were all concerned with juveniles and, as the United States Supreme Court held, "children are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471. Appellant, on the other hand, was [an adult] at the time he committed his crimes. Further, in *Jones v. Mississippi*, 141 S. Ct. 1307 (2021), the United States Supreme Court limited the holdings of *Miller* and *Montgomery*. As the Pennsylvania Supreme Court summarized, under *Jones*, "a life-without-parole sentence for a juvenile murderer is constitutional, and hence no viable *Miller* claim exists, 'so long as the sentence is not mandatory — that is, so long as the sentencer has discretion to consider the mitigating qualities of youth and impose a lesser punishment.'" *Commonwealth v. Felder*, 269 A.3d 1232, 1243 (Pa. 2022), *quoting Jones*, 141 S.Ct. at 1314. However, as noted above, Appellant was not a juvenile at the time he committed his crimes and, thus, the specific holdings of *Miller*, *Montgomery*, and *Jones* do not apply to him. Appellant's first claim on appeal thus fails.

*Lee*, 301 A.3d at *2-3 (brackets and some citations omitted).[4]

The exact same analysis applies here. Cason has not provided us with any reason to question the validity of *Rivera*, and we are bound by its precedent, as explained by *Lee,* unless and until the Pennsylvania Supreme Court overrules *Lee*. Cason was an adult at the time of his crimes, and we find no valid Eighth Amendment challenge. As such, we are bound by current precedent and cannot grant Cason's first two claims.

Next, Cason argues the evidence was insufficient to support his convictions. *See* Appellant's Brief, at 54.

We begin with the scope and standard of review regarding sufficiency claims:

> Because a determination of the sufficiency of the evidence presents a question of law, our standard of review is de novo and our scope of review is plenary. Further, we analyze this issue under the following guidelines:
>
> > When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a

---

[4] We additionally note that in *Lee*, Judge Alice Beck Dubow recommended, by way of a concurring memorandum, that the Pennsylvania Supreme Court revisit the issue of whether a mandatory minimum sentence of life without parole imposed for all second-degree murder convictions remains constitutional in light of changes in related federal and state case law.

mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

**Commonwealth v. Henck**, 342 A.3d 726, 731-32 (Pa. Super. 2025)

(citations, italics, and quotation marks omitted).

Cason was convicted of two counts of conspiracy, which is defined as:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

We have explained:

To convict [a defendant] of criminal conspiracy, the evidence must establish that the defendant entered an agreement with another person to commit or aid in the commission of an unlawful act, that the conspirators acted with a shared criminal intent, and that an overt act was done in furtherance of the conspiracy. An explicit or formal agreement to commit crimes can seldom, if ever, be proven and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. An agreement sufficient to establish a conspiracy can be inferred from a variety of circumstances including, but not limited to, the relationship between the parties, knowledge of and

participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.

Once a conspiracy is established, the actions of each co-conspirator may be imputed to the other conspirators. In this regard, the law in Pennsylvania is settled that each conspirator is criminally responsible for the actions of his co-conspirator, provided that the actions are accomplished in furtherance of the common design.

> Where the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design of purpose of the conspiracy. Such responsibility attaches even though such conspirator was not physically present when the acts were committed by his fellow conspirator or conspirators and extends even to a homicide which is a contingency of the natural and probable execution of the conspiracy, even though such homicide is not specifically contemplated by the parties.

*Commonwealth v. Geiger*, 944 A.2d 85, 90-91 (Pa. Super. 2008) (citations, quotation marks, and brackets omitted). Furthermore, "no crime at all need be accomplished for the conspiracy to be committed." *Commonwealth v. Weimer*, 977 A.2d 1103, 1105 (Pa. 2009).

The first count of conspiracy indicated it was conspiracy to commit robbery under subsection 3701(a)(1)(ii). That subsection provides "[a] person is guilty of robbery if, in the course of committing a theft, he: … (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S.A. § 3701(a)(1)(ii). Notably, "[a]n act shall be deemed

'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2).

Cason asserts the evidence was insufficient to support his conviction of conspiracy to commit robbery because no robbery or attempted robbery occurred. *See id.* at 57. Cason claims he merely planned to speak to Sheppard and never planned to rob Sheppard. *See* Appellant's Brief, at 56.

This assertion is belied by the record. Atkinson testified she told Cason and Gates she wanted her property back and money to fix the broken property, even if that meant robbing Sheppard. *See* N.T. Trial, 3/6/24, at 123-24. In response, Cason asked what was in Sheppard's house, which Atkinson took to mean what was available that was worth stealing. *See id.* at 125-26. Prior to leaving for Sheppard's house, Cason gave Gates a handgun. *See id.* at 130.

This evidence establishes Cason intended to commit a robbery, or intended to aid Gates in his commission of a robbery. However, Cason further argues that Sheppard's testimony established no robbery occurred and shows there was no intent to commit a robbery because there were no threats or demands for property and/or money. *See* Appellant's Brief, at 57. Cason submits that after the discussion with Sheppard, there is no evidence of any additional planning to commit the robbery, thereby breaking the chain of events and ending any potential conspiratorial relationship. *See id.* We disagree.

- 13 -

After talking to Sheppard, Cason and Gates returned to Atkinson and told her Sheppard said she was lying; he never stole anything. *See* N.T. Trial, 3/6/24, at 139-40. Ultimately, Gates said, "I knew he was lying to me." *Id.* at 142. They decided to go back to Sheppard again but then saw Sheppard driving away. *See id.* at 143. Gates took this to mean Sheppard was lying, stating "why would they be leaving if they weren't lying." *Id.* Cason then told Atkinson "if you want this to be fixed you better go follow them." *Id.* Atkinson drove at a high rate of speed and the wrong way down a one-way street while following Sheppard. At no point did Cason seek to remove himself from the conspiracy during this episode. Furthermore, after the shooting, Cason assisted in concealing evidence that would link him to the homicide and told Atkinson to keep his name out of it. *See id.* at 157.

This evidence, although circumstantial, is certainly sufficient to show the original plan of robbing Sheppard did not end simply because Cason and Gates initially walked away from Sheppard without robbing him. Cason urged Atkinson to follow Sheppard so she could obtain the property she believed was stolen, along with money to fix the items she believed Sheppard broke. This shows Cason's intent to continue the original conspiracy. This claim does not merit relief.

The second count of conspiracy is conspiracy to commit homicide. Cason claims "there is no substantive evidence that [Cason] was engaged in any plot

to commit murder, nor is there any evidence that [Cason] assisted in the facilitation of the murder." Appellant's Brief, at 58-59.

As detailed above, Cason provided Gates the firearm used to shoot and kill Glover. Our Court has held that "[e]ven though the killing was not specifically contemplated by the parties[,] responsibility attaches to a homicide which is a contingency of the natural and probable execution of the conspiracy." *Commonwealth v. Arrington*, 247 A.3d 456, 462 (Pa. Super. 2021) (internal quotation marks, citation, ellipses, and brackets omitted). Further, this Court explained "conspirators need not contemplate the ultimate crime in order to be charged and convicted of conspiracy to commit that crime[. T]he conspiracy to commit an overt act binds the conspirators to the foreseeable consequences of the conduct." *Id.* (ellipsis and citation omitted).

In planning the robbery, Cason provided a firearm to Gates. When the planned victim left his house and drove away, Cason urged Atkinson to follow him at a high rate of speed and down the wrong way on one-way streets. Certainly, a homicide occurring as a result of the firearm provided by Cason is a natural and foreseeable consequence of his conduct. This claim therefore has no merit.

In his final sufficiency challenge, Cason argues there is no evidence he conspired to commit one of the enumerated crimes of subsection 2502(b). *See* Appellant's Brief, at 62-63. We disagree.

Subsection 2502(b) provides "[a] criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). "Perpetration of a felony" is defined, in pertinent part, as "[t]he act of the defendant engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery[.]" 18 Pa.C.S.A. § 2502(d). "The malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually intended to physically harm the victim." *Commonwealth v. Dixon*, 276 A.3d 794, 800 (Pa. Super. 2022) (citation omitted).

As detailed above, the killing occurred while Cason and his cohorts were attempting to rob Sheppard. Just as we found Cason's claim regarding conspiracy to commit robbery did not have merit, we further find this claim lacks merit. Cason, while planning a robbery, provided a firearm to Gates. The fact that the robbery was not committed while at Sheppard's house is of no moment. When the conspirators saw Sheppard driving away, they decided it was now or never, and Cason told Atkinson as much. *See* N.T. Trial, 3/6/24, at 143 (Cason told Atkinson "if you want this to be fixed you better go follow them."). Gates then shot at the victims, killing Glover. Cason was engaged as an accomplice to their plan to commit robbery when Gates opened fire on the victim. As such, Cason's sufficiency claims fail.

Finally, Cason argues the trial court erred in denying his motion for a new trial wherein he alleged the verdict was against the weight of the evidence. **See** Appellant's Brief, at 63. Cason claims Atkinson's testimony should not be the basis for his convictions as she "admitted to being untruthful throughout this investigation." **Id.** at 64. He further asserts Sheppard's testimony supports he was not involved in the shooting or any robbery, and therefore his convictions must be overturned. **See id.**

A "weight of the evidence claim is addressed to the [sound] discretion of the trial court." **Commonwealth v. Dortch**, 343 A.3d 298, 306 (Pa. Super. 2025) (citation omitted).

> Where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion on ruling on the weight claim.
>
> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interests of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained the term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the

will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Id.* (brackets and citations omitted).

After incorporating its analysis regarding the sufficiency of the evidence, the trial court held:

Here, the jury in this case was presented with videotaped evidence, circumstantial evidence, forensic evidence, the eyewitness testimony of Tariq Sheppard, the testimony of co-defendant and cooperating Commonwealth witness, Aiyanna Atkinson, testimony from police officers, and other forms of direct and circumstantial evidence.

The jury found [Cason] guilty of the three charges set forth above, but also found him not guilty of the two remaining offenses. The record is therefore clear that the jury deliberated conscientiously and made factual determinations which they applied to the applicable law as they were instructed. [Cason's] motion for a new trial is primarily based upon the testimony of co-defendant and cooperating witness Atkinson. The record also reflects that she was subject to intense cross-examination. However, there were numerous pieces of evidence which corroborated significant and material portions of her testimony. The jury exercised their duties and obviously made certain credibility determinations that they felt supported their verdict of guilty of felony-murder, criminal conspiracy to commit criminal homicide/murder, and criminal conspiracy to commit robbery.

The [trial] court notes that [Cason] can be convicted on the uncorroborated testimony of an accomplice so long as the fact finder scrutinizes the testimony carefully because of it being from a corrupt source. [The trial] court gave the appropriate instruction. It is also important to note that corroborated accomplice testimony can render it more dependable. The [trial] court believes that is what occurred in this case.

> The verdicts do not shock the conscience of [the trial] court. [The trial] court, having presided over the zealously litigated jury trial, hereby finds that the weight of the evidence was more than enough to convict [Cason].

Opinion and Order Denying Post-Sentence Motion, 8/30/24, at 10-11 (unnecessary capitalization omitted).

We find no abuse of discretion in the trial court's analysis. It thoroughly detailed the same evidence we discussed above in our sufficiency analysis and did not find Atkinson's testimony that she admittedly lied to police in prior statements enough to shock the conscience of the court. Notably, Atkinson explained she lied to protect Cason in her statements to police, as he was like a brother to her. *See* N.T. Trial, 3/6/24, at 168. The jury weighed this testimony along with the entirety of the circumstantial and direct evidence and the trial court rightfully declined to overrule their verdict. Therefore, Cason's final claim is meritless.

As none of Cason's claims merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/1/2025