J-A05001-22

2022 PA Super 101

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
  :
v.   :
  :
  :
  :
COLIN LYNN WRIGHT   :
  :
Appellant   :   No. 486 MDA 2021

Appeal from the Judgment of Sentence Entered September 24, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004124-2019

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.*

OPINION BY OLSON, J.:               **FILED:  MAY 31, 2022**

Appellant, Colin Lynn Wright, appeals from the judgment of sentence entered on September 24, 2020.  We vacate and remand.

On September 24, 2020, Appellant pleaded guilty to simple assault.[1]  In exchange for this plea, the Commonwealth agreed to recommend a sentence of "[two] years [of] probation, plus restitution of $500.00 to [the Pennsylvania Victims Compensation Assistance Program ("VCAP")] in Harrisburg."  N.T. Guilty Plea, 9/24/20, at 2.   Further, the parties agreed that the Commonwealth "reserve[ed] the ability to modify restitution." ***Id.***

During the plea hearing, Appellant admitted that, on February 20, 2019, he pushed J.M. (hereinafter "the Victim") and that, as a result of this assault,

_____

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2701(a)(1).

the Victim sustained injuries.  *Id.* at 7; *see also* Commonwealth's Amended Information, 1/29/20, at 1.  On September 24, 2020, the trial court accepted Appellant's plea and, that day, the trial court sentenced Appellant in accordance with the negotiated agreement.  N.T. Guilty Plea, 9/24/20, at 12.

On September 25, 2020, the Commonwealth filed its "Motion to Modify Restitution."  The motion declared:

> Due to the direct cause of the injury [to the Victim, the Victim] had to undergo [shoulder] surgery, various medical procedures, and medical visits.  These costs owed by the [Victim] were covered by The [Phia] Group in the amount of $51,039.07.  Likewise, [VCAP] has covered $5,974.80 of the [Victim's] medical expenses.  Therefore, the Commonwealth is requesting that the total amount of restitution be modified to $57,013.87.

Commonwealth's Motion to Modify Restitution, 9/25/20, at 1 (citations omitted).

The trial court later held a hearing on the Commonwealth's motion. During the restitution hearing, the Commonwealth called Maribel McLaughlin, an employee of The Phia Group, as a witness.  As Ms. McLaughlin testified, at the time of the Victim's shoulder surgery, the Victim was employed by HCR ManorCare and she received her health coverage "as an employee through this company." N.T. Restitution Hearing, 12/15/20, at 15-16.  HRC ManorCare self-insures its employees' health care benefits through its self-funded employee benefit plan.  *Id.*  The assets of the employee benefit plan are held in trust and the trust is administered by a third-party administrator, Meritain Health.  *Id.*  Meritain Health, in turn, "work[s] with Aetna, a network, to obtain

preferred providers to cover negotiated fees, and in this case, WellSpan [Health] is a preferred provider through that network." *Id.* Further, Ms. McLaughlin testified, the Victim received her shoulder surgery at WellSpan Health. *See id.*

Ms. McLaughlin testified that, in total, "the amount charged to the health plan" for all expenses related to the Victim's shoulder surgery was $63,716.15. *Id.* at 13-14; *see also* Commonwealth's Exhibit 2. Ms. McLaughlin testified that "the self-funded benefit plan through HCR ManorCare" then paid a total of $51,039.07 for the Victim's surgical care. N.T. Restitution Hearing, 12/15/20, at 13-14; Commonwealth's Exhibit 2. She testified that the self-funded benefit plan paid the lower amount, as it was "[b]ased on the network [and] . . . based on a negotiated amount." N.T. Restitution Hearing, 12/15/20, at 14.

As Ms. McLaughlin testified, The Phia Group "contracted with [the third party administrator, Meritain Health,] to review data and pursue claims for recovery and reimbursement to health plans." N.T. Restitution Hearing, 12/15/20, at 11. She further explained that The Phia Group is "merely the recovery and reimbursement subrogation vendor for HCR ManorCare and Meritain." *Id.* at 16. She testified: "[The Phia Group does] not pay claims. The claims get paid through the third party administrator, which is Meritain Health. The funds come out of the trust out of HCR ManorCare health plan." *Id.*

Next, the Commonwealth called Dr. John Deitch as a witness. Dr. Deitch testified that he is an orthopedic surgeon and director of sports medicine for WellSpan Health and that he performed the September 11, 2019 shoulder surgery on the Victim. *Id.* at 18-19. As Dr. Deitch testified, following the February 20, 2019 assault, the Victim: "[w]as evaluated in the emergency department [on February 20, 2019] and was diagnosed or presented with what appeared to be a shoulder dislocation. It was reduced in the emergency department that night." *Id.* at 24. As the doctor testified, the medical records reveal that the Victim suffered a "full dislocation" of her shoulder on February 20, 2019. He testified:

> [the medical records from February 20, 2019] indicate[ that the Victim] was awaiting post-reduction x-ray. The clinician at the time, based on exam and mechanism per the record, said likely anterior inferior dislocation. The prescribing clinician recommended numbing medicine as well as an antinausea medicine and then performing a shoulder reduction, in other words, put the joint back in place.

*Id.* at 26-27.

Dr. Deitch testified that he first met with the Victim on June 6, 2019. He testified that he did not immediately recommend surgery "because we needed to get further information to help plan the surgery." *Id.* at 29. The doctor thus "order[ed an] MRI arthrogram." *Id.* He testified that, after meeting the Victim in June 2019, the Victim experienced "multiple dislocations or subluxations unrelated to the February incident." *Id.* The doctor testified that he eventually arrived at the opinion that the Victim required surgery. As

he testified: "[the February 20, 2019] dislocation as well as other[ dislocations] precipitated chronic recurrent shoulder instability for which [the Victim] required surgery." *Id.* at 24 and 25.

The Victim also testified at the restitution hearing. As the Victim testified, before the February 20, 2019 assault, she suffered one prior shoulder dislocation in November 2017. However, she testified: "I had no issues between November of 2017 and February of 2019. Yeah, I had no shoulder problems, nothing. Like, I healed fine. Everything was fine." *Id.* at 36-37. The Victim testified that, after Appellant assaulted her on February 20, 2019, her shoulder "wouldn't stay stable. Like, I couldn't even reach my arms out to give my kids a hug. My arm would just, like, fall out of [the] socket. Just movement like that, it would just fall out." *Id.* at 37. She testified that she finally met with Dr. Deitch "because I didn't know what else to do. Like, it wouldn't stay stable. There was nothing I could do. You know, I couldn't function. I couldn't work. I couldn't do anything." *Id.*

On February 23, 2021, the trial court granted the Commonwealth's motion to modify restitution and ordered Appellant to pay restitution, as part of his direct sentence under 18 Pa.C.S.A. § 1106, in the following amounts: $51,039.07 to The Phia Group and $5,000.00 to VCAP. *See* N.T. Restitution Hearing, 2/23/21, at 22 and 25. Appellant filed a timely notice of appeal. He raises three issues on appeal:

> [1.] Did the trial court err when it modified the sentenc[ing] order when it determined that [The Phia Group] was a victim under 18 Pa.C.S.A. § 1106(c)?

- 5 -

[2.] Did the trial court err when it modified the sentenc[ing] order by failing to apply the "but for" test to identify damages which occurred as a direct result of the crime and which should not have occurred but for [Appellant's] criminal conduct?

[3.] Did the trial court err when it modified the sentenc[ing] order because the modification was speculative and unsupported by the record?

Appellant's Brief at 4.

Our Supreme Court has explained:

in the criminal context, generally speaking, restitution is the requirement that the criminal offender repay, as a condition of his sentence, the victim or society, in money or services. It is well established that the primary purpose of restitution is rehabilitation of the offender by impressing upon him or her that his [or her] criminal conduct caused the victim's loss or personal injury and that it is his [or her] responsibility to repair the loss or injury as far as possible. Thus, recompense to the victim is only a secondary benefit, as restitution is not an award of damages. Although restitution is penal in nature, it is highly favored in the law and encouraged so that the criminal will understand the egregiousness of his or her conduct, be deterred from repeating the conduct, and be encouraged to live in a responsible way.

**Commonwealth v. Brown**, 981 A.2d 893, 895-896 (Pa. 2009) (footnotes and citations omitted).

In this case, the trial court ordered restitution as a part of Appellant's direct sentence, in accordance with 18 Pa.C.S.A. § 1106. **See**, **e.g.**, Trial Court Opinion, 6/3/21, at 19; Commonwealth's Brief at 11. In relevant part, Section 1106(a) reads:

**(a) General rule.--**Upon conviction for any crime wherein:

(1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or

(2) the victim, if an individual, suffered personal injury directly resulting from the crime,

the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

. . .

**(c) Mandatory restitution.--**

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other government agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

(ii) If restitution to more than one victim is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

(A) Any individual.

(A.1) Any affected government agency.

(B) The Crime Victim's Compensation Board.

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(E) Any estate or testamentary trust.

(F) Any business entity organized as a nonprofit or not-for-profit entity.

(G) Any other business entity.

. . .

**(h) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

. . .

**"Business entity."** A domestic or foreign:

(1) business corporation;

(2) nonprofit corporation;

(3) general partnership;

(4) limited partnership;

(5) limited liability company;

(6) unincorporated nonprofit association;

(7) professional association; or

(8) business trust, common law business trust or statutory trust.

. . .

> **"Insurance company."** An entity that compensates a victim for loss under an insurance contract.
>
> **"Insurance contract."** A contract governed by the insurance laws of the state in which it was issued or a plan of benefits sponsored by an employer or employee organization.
>
> . . .
>
> **"Restitution."** The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.
>
> **"Victim."** As defined in section 103 of the act of November 24, 1998 (P.L. 882, No. 111), known as the Crime Victims Act. The term includes an affected government agency, the Crime Victim's Compensation Fund, if compensation has been paid by the Crime Victim's Compensation Fund to the victim, any insurance company that has compensated the victim for loss under an insurance contract and any business entity.

18 Pa.C.S.A. § 1106 (effective October 24, 2018) (footnote omitted).[2, 3]

---

[2] Appellant committed his crime on February 20, 2019. Therefore, the current version of Section 1106 applies to this case.

[3] Section 1106(h) declares that the term "victim" includes the relevant definition "in section 103 of the . . . Crime Victims Act." In relevant part, 18 P.S. § 11.103 defines the terms "direct victim" and "victim" as follows:

> "Direct victim." An individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act. . . .
>
> "Victim." The term means the following:
>
> (1) A direct victim.

*(Footnote Continued Next Page)*

We have explained that, under the plain terms of Section 1106(a), the sentencing court "is statutorily required to impose restitution . . . when the Commonwealth has established that the defendant committed a crime, the victim suffered injury to person or property, and there exists a direct causal nexus between the crime of which defendant was convicted and the loss or damage suffered by the victim." **Commonwealth v. Weir**, 201 A.3d 163, 170 (Pa. Super. 2018). Further, Section 1106 demands that the trial court order "full restitution . . . to provide the victim with the fullest compensation for the loss." **Id.** Our Supreme Court has, however, held:

> Because [18 Pa.C.S.A. § 1106] imposes restitution as part of a sentence, its penal character must not be overlooked and it would seem to us that restitution can be permitted under 18 Pa.C.S.A. § 1106 only as to losses for which the defendant has been held criminally accountable. This is in keeping with the well established principle that criminal statutes must be strictly construed. **See** 1 Pa.C.S.A. § 1928(b)(1).

**Commonwealth v. Harner**, 617 A.2d 702, 705 (Pa. 1992) (some citations omitted).

---

> (2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.
>
> (3) A minor child who is a material witness to . . . [certain crimes and offenses] committed or attempted against a member of the child's family. . . .
>
> (4) A family member of a homicide victim . . . except where the family member is the alleged offender.

18 P.S. § 11.103.

- 10 -

We turn now to consider the precise nature of Appellant's challenges to the trial court's restitution order. In discerning the nature of a challenge to the imposition of restitution, we have held:

> the appellate courts have drawn a distinction between those cases where the challenge is directed to the trial court's [statutory] authority to impose restitution and those cases where the challenge is premised upon a claim that the restitution order is excessive. When the court's authority to impose restitution is challenged, it concerns the legality of the sentence; however, when the challenge is based on excessiveness, it concerns the discretionary aspects of the sentence.

*Commonwealth v. Oree*, 911 A.2d 169, 173 (Pa. Super. 2006); *see also In re M.W.*, 725 A.2d 729, 731 (Pa. 1999) (holding that, when an issue "centers upon [the court's] statutory authority" to impose the sentence, as opposed to the "court's exercise of discretion in fashioning" the sentence, the issue implicates the legality of the sentence); *Commonwealth v. Walker*, 666 A.2d 301, 307 (Pa. Super. 1995) ("challenges alleging that a sentence of restitution is excessive under the circumstances have been held by this court to be challenges to the discretionary aspects of sentencing").

First, Appellant claims that the trial court lacked statutory authority to order that he pay restitution to The Phia Group, as The Phia Group is neither a victim nor an insurance company. Appellant's Brief at 7. Appellant's claim implicates the legality of his sentence, as the challenge "centers upon [the court's] statutory authority" to impose the sentence of restitution. *See In re M.W.*, 725 A.2d at 731. We note that "[l]egality of sentence questions are

not waivable and may be raised *sua sponte* [on direct review] by this Court."

**Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013) (*en banc*).

Further, since Appellant's claim implicates the legality of his sentence, the

claim "presents a pure question of law." **Commonwealth v. Petrick**, 217

A.3d 1217, 1224 (Pa. 2019). As such, "our scope of review is plenary and our

standard of review *de novo*." **Id.**

Appellant's claim requires that we "interpret[] the provision of the

Crimes Code which mandates restitution." **Commonwealth v. Brown**, 981

A.2d 893, 897 (Pa. 2009). To do so, "we necessarily turn to the Statutory

Construction Act. 1 Pa.C.S.A. §§ 1501 *et seq*." **Brown**, 981 A.2d at 897. As

our Supreme Court has explained:

> The Statutory Construction Act provides that the object of our
> interpretation and construction of statutes is to ascertain and
> effectuate the intention of the legislature. 1 Pa.C.S.A.
> § 1921(a). The General Assembly's intent is best expressed
> through the plain language of the statute. When the words
> of a statute are clear and unambiguous, there is no need to
> look beyond the plain meaning of the statute "under the
> pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b).
> Therefore, only when the words of a statute are ambiguous
> should a court seek to ascertain the intent of the General
> Assembly through consideration of statutory construction
> factors found in Section 1921(c). 1 Pa.C.S.A. § 1921(c).
> Finally, penal statutes are to be strictly construed. 1
> Pa.C.S.A. § 1928 (b)(1).
>
> The need for strict construction, however, does not require
> that the words of a penal statute be given their narrowest
> meaning or that legislative intent be disregarded. It does
> mean, however, that, if an ambiguity exists in the verbiage
> of a penal statute, such language should be interpreted in the
> light most favorable to the accused. More specifically, where

doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt.

Finally, the Crimes Code itself supplies guidance as to the construction of the provisions of the Code: "The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." 18 Pa.C.S.A. § 105.

**Brown**, 981 A.2d at 897-898 (some citations and quotation marks omitted).

The case at bar is not one where "property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of [a] crime." **See** 18 Pa.C.S.A. § 1106(a)(1). Rather, in this case, restitution was ordered because the Victim "suffered personal injury directly resulting from the crime." **See** 18 Pa.C.S.A. § 1106(a)(2). Thus, in the case at bar, the trial court was required to order that Appellant pay restitution under 18 Pa.C.S.A. § 1106(a)(2). As noted above, Section 1106(a)(2) declares: "[u]pon conviction for any crime wherein . . . the victim, if an individual, suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor." 18 Pa.C.S.A. § 1106(a)(2).

Section 1106(c) goes on to declare that the trial court "shall order full restitution . . . [r]egardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss." 18 Pa.C.S.A. § 1106(c)(1)(i). Further, as our Supreme Court has held, "as evinced by the [ever] broaden[ing] Section 1106, the General Assembly not

only expressed an increased focus on the importance of mandatory restitution, it believed that criminal offenders should provide restitution to the victim directly, and to entities incurring expenses on the victim's behalf." **Brown**, 981 A.2d at 900. Thus, included in the definition of "victim" is "any insurance company that has compensated the victim for loss under an insurance contract." 18 Pa.C.S.A. § 1106(h).

In this case, the trial court ordered Appellant to pay restitution, to The Phia Group, in the amount of $51,039.07. On appeal, Appellant claims that the trial court lacked statutory authority to order that he pay restitution to The Phia Group, as The Phia Group is neither the "victim" nor an "insurance company." We agree.

The testimony at the restitution hearing reveals that HRC ManorCare self-insures its employees' health care benefits through its self-funded employee benefit plan. N.T. Restitution Hearing, 12/15/20, at 15-16. Self-funded employee benefit plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* **See**, **e.g.**, **FMC Corp. v. Holliday**, 498 U.S. 52 (1990). The assets of the employee benefit plan are held in trust, pursuant to 29 U.S.C. § 1103, and the trust is administered by a third-party administrator, Meritain Health. N.T. Restitution Hearing, 12/15/20, at 15-16; **see also** 29 U.S.C. § 1103(a) ("[e]xcept as [otherwise provided,] all assets of an employee benefit plan shall be held in trust by one or more trustees").

The Victim received health care coverage through her employment at HRC ManorCare. N.T. Restitution Hearing, 12/15/20, at 15-16. The Victim testified that, as a direct result of Appellant's February 20, 2019 assault, she required shoulder surgery. N.T. Restitution Hearing, 12/15/20, at 36-37. Maribel McLaughlin, of The Phia Group, testified that the funds for this surgery came directly "out of the trust out of HCR ManorCare health plan" and that the trust paid a total of $51,039.07 for the Victim's surgical care. *Id.* at 13-14. Ms. McLaughlin's testimony also clarified The Phia Group's role in paying health care claims on behalf of beneficiaries of the HCR ManorCare health plan. She testified that The Phia Group is "merely the recovery and reimbursement subrogation vendor for HCR ManorCare and Meritain" and that "[The Phia Group does] not pay claims." *Id.* at 16.

Our restitution statute defines the terms "insurance company" and "insurance contract" in the following manner:

> **"Insurance company."** An entity that compensates a victim for loss under an insurance contract.
>
> **"Insurance contract."** A contract governed by the insurance laws of the state in which it was issued or a plan of benefits sponsored by an employer or employee organization.

18 Pa.C.S.A. § 1106(h).

Further, Section 1106 specifically declares:

> The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company **to the insurance company**.

- 15 -

18 Pa.C.S.A. § 1106(c)(1)(i) (emphasis added); **see also** 18 Pa.C.S.A. § 1106(h) (defining the term "victim" as including "any insurance company that has compensated the victim for loss under an insurance contract").

Simply stated, The Phia Group did not compensate the Victim in this case for a loss and The Phia Group was not operating "under an insurance contract" with the Victim. As such, The Phia Group does not qualify as an "insurance company" under Section 1106. Rather, in this case, it appears as though the trust established pursuant to HCR ManorCare's self-funded employee benefit plan "compensate[d the V]ictim for loss under an insurance contract," where the "insurance contract" was "a plan of benefits sponsored by [the Victim's] employer," HCR ManorCare.[4]

_____

[4] The ERISA preemption provision is contained in 29 U.S.C. § 1144(a). In relevant part, Section 1144 declares:

> **(a) Supersedure . . .**
>
> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. . . .
>
> **(b) Construction and application**
>
> . . .
>
> **(2)(B)** Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other

*(Footnote Continued Next Page)*

Further, although Ms. McLaughlin testified that The Phia Group contracted with the third-party administrator of the trust, Meritain Health, to "pursue claims for recovery and reimbursement" that were expended by the trust, the plain language of Section 1106(c)(1)(i) only permits restitution to go "**to the insurance company**" – not to a separate company that pursues "recovery and reimbursement" on behalf of the insurance company. 18 Pa.C.S.A. § 1106(c)(1)(i) (emphasis added). Our interpretation of Section 1106's plain language is bolstered by the fact that Section 1106 is a penal

---

insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

. . .

**(4)** Subsection (a) shall not apply to any generally applicable criminal law of a State.

29 U.S.C. § 1144.

Section 1144(b)(2)(B) declares that an employee benefit plan and a trust established under such a plan may not "be deemed to be an insurance company" under ERISA. 29 U.S.C. § 1144(b)(2)(B). However, Section 1144(b)(4) declares that ERISA does not preempt "any generally applicable criminal law of a State." 29 U.S.C. § 1144(b)(4).

The issue of whether Pennsylvania's criminal restitution statute, 18 Pa.C.S.A. § 1106, completely falls within ERISA's anti-preemption provision has not been briefed in this case and a decision on the issue is unnecessary to resolve Appellant's claims.

- 17 -

statute and thus must be "strictly construed in favor of the defendant." ***Commonwealth v. Smith***, 221 A.3d 631, 636 (Pa. 2019).

Thus, since The Phia Group is not an "insurance company" and did not pay any claim in this case, The Phia Group was not entitled to restitution under the plain language of Section 1106. We must, therefore, vacate Appellant's judgment of sentence and remand for resentencing.[5, 6]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/31/2022

---

[5] Since we vacate Appellant's judgment of sentence, Appellant's remaining claims are moot.

[6] Our holding does not mean that the trial court is precluded from ordering Appellant to pay restitution for losses previously compensated by an insurance company. We simply hold that restitution must be ordered in accordance with Section 1106 and that The Phia Group is not eligible under that provision to receive payment since it is neither an "insurance company" nor a "victim" under the statute.