J-S13034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXIS CADO-SUERO | : | |
| | : | |
| Appellant | : | No. 779 MDA 2024 |

Appeal from the Judgment of Sentence Entered April 30, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004081-2021

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED: JANUARY 22, 2026**

Appellant Alexis Cado-Suero appeals from the judgment of sentence imposed after he was convicted of first-degree murder and possession of a firearm by a minor.[1] On appeal, Appellant challenges the weight and sufficiency of the evidence. Appellant also argues that the trial court erred by denying his motion for decertification from the juvenile court division, by issuing a jury instruction regarding consciousness of guilt, and by admitting evidence of Appellant's gang affiliation. We affirm Appellant's convictions, vacate the restitution component of the sentence, and remand for resentencing.

We adopt the trial court's summaries of the factual and procedural history. **See** Trial Ct. Op. & Order, 1/18/23, at 2-3; Trial Ct. Op., 9/18/24, at

---

[1] 18 Pa.C.S. §§ 2502(a) and 6110.1(a), respectively.

1-5, 9-17. Relevant to the instant appeal, on March 27, 2021, around 2:45 p.m., Appellant left the home of his friend, Q.M., on a bicycle. *See* N.T. Trial, 1/22-23/24, at 303-04; N.T. Trial, 1/24-25/24, at 164. Cameras recorded Appellant's movements after leaving Q.M.'s house. *See* N.T. Trial, 1/24-25/24, at 162-67.

At the same time, T.S. (the victim), O.D., K.J., and others were walking towards Penn Park in York, Pennsylvania. *See* N.T. Trial, 1/22-23/24, at 123-25. Appellant approached the victim and his companions near the intersection of West Newton Avenue and Brooklyn Avenue and opened fire. *See id.* at 125-27. Video from the area near the park depicted the sound of gunshots and the victim, O.D., and K.J. running away. *See* N.T. Trial, 1/24-25/24, at 170-72. Appellant fled the area on his bicycle. *See* N.T. Trial, 1/22-23/24, at 192-93. Cameras also recorded Appellant's movements before and after the shooting. *See* N.T. Trial, 1/24-25/24, at 162-67.

Officer Tyler Benton responded to the shooting saw a group of people around the victim who was lying on the ground. *See* N.T. Trial, 1/22-23/24, at 211-13. A female was giving CPR to the victim and Officer Benton took over providing CPR. *See id.* at 213. The victim later died from a gunshot wound to his chest. *See* N.T. Trial, 1/24-25/24, at 17, 23-24. The police recovered a firearm from a satchel slung over the victim's shoulder. *See* N.T. Trial, 1/22-23/24, at 215-18, 225.

One or two days prior to the shooting, John Taylor-Williams observed Appellant and the victim arguing over the social media application Snapchat.

*See* N.T. Trial, 1/22-23/24, at 332-35, 339-40. Taylor-Williams heard Appellant tell the victim that Appellant was going to "smoke" the victim, *i.e.*, shoot him. *See id.* at 338-39.

After the shooting, Appellant returned the house of his friend, Q.M. *See id.* at 304. While at Q.M.'s house, Appellant began livestreaming video on the social media application Instagram, wherein Q.M. stated "we been chilling at the crib all day," or words to that effect. *See id.* at 306-07. During the livestream, Appellant and Q.M. were also communicating with other Instagram users. *See id.* at 309-10. At trial, Q.M. testified that his statement in the video that he and Appellant had been "chilling at the crib all day" was not true. *See id.* at 306.

About a week or two after the shooting, Appellant told Taylor-Williams about how Appellant approached the victim on a bicycle, got off of the bicycle, shot the victim, and then fled. *See id.* at 336-37.

After the shooting, Appellant did not return to his home, instead he stayed with another friend, which he later referred to as "jumping houses." *See* N.T. Trial, 1/24-25/24, at 308-09. When a York Police Officer encountered Appellant on June 5, 2021, Appellant ran away from the officer, who pursued and arrested Appellant. *See* N.T. Trial, 1/22-23/24 at 246-47.

Appellant, who was fifteen years old at the time of the shooting, was charged as an adult. On November 11, 2021, Appellant filed a petition to transfer this matter to the juvenile court (Decertification Petition) pursuant to 42 Pa.C.S. §§ 6322 and 6355. Amy Taylor, Psy.D and Frank Dattilio, Ph.D.

performed psychological assessments of Appellant and testified at the November 30, 2022 hearing on the Decertification Petition. Appellant's Decertification Petition was denied by operation of law on December 20, 2022, but the clerk of courts did not enter an order to that effect on that date. The trial court subsequently entered an opinion and order denying the Decertification Petition on January 18, 2023.

Prior to trial, the Commonwealth filed motions *in limine* to introduce evidence of Appellant's involvement with a gang and expert testimony regarding gang membership, motives, practices, and vernacular. Following a hearing on January 18, 2024, the trial court granted the Commonwealth's motion *in limine* regarding evidence of Appellant's gang involvement.

Appellant's jury trial began on January 22, 2024. At trial, the trial court accepted Officer Peter Fouad as an expert in gang membership and affiliation in the City of York. *See* N.T. Trial, 1/24-25/24, at 96. Officer Fouad testified that he uses several criteria to identify individuals as members of a gang including self-identification, "display of gang identifiers such as colors, graffiti, hand signs," and "possession of gang paraphernalia, or tattoos and marks." *Id.* at 100. He explained that there are several gangs operating in York including a gang in the southern section of the city (South Side Gang) and a gang in the western section of the city (West Side Gang). *See id.* at 98-101. Officer Fouad testified that the South Side and the West Side gangs are rivals, and there have been violence altercations between the two groups. *See id.* at 104. Officer Fouad testified that the South Side Gang uses the numbers

"2" and "200" to identify themselves. *See id.* at 101. Further, the West Side Gang uses the numbers "6" and "600" to identify themselves. *See id.* at 103. Officer Fouad opined that Appellant is a member of the West Side Gang because, among other reasons, Appellant's Instagram username is "lil_backdoor6," Appellant had posted photos displaying a hand sign in the shape of the letter "w," and Appellant had written social media messages stating he was "from out west" and "from 600." *See id.* at 107-08, 112-13. Officer Fouad identified the victim and O.D. as members of the South Side Gang based on photos of them shared on social media. *See id.* at 117-20. Lastly, in another social media post, Appellant wrote "G sh--, I big 200k." *Id.* at 112. Officer Fouad explained that "200" referred to the South Side gang and "k" referred to "killed," *i.e.*, Appellant had admitted to killing a member of the South Side gang. *Id.*

On January 24, 2024, following the close of the Commonwealth's case-in-chief, Appellant made an oral motion for "for demur or judgment of acquittal . . . ." *Id.* at 247. The trial court denied Appellant's motion. *See id.* at 248. Subsequently, Appellant testified that on March 27, 2021, he was at Q.M.'s house but left to meet K.J. *See id.* at 301-03. Appellant admitted that he is the person on the bicycle depicted in the videos that the Commonwealth had previously played during the trial. *See id.* at 303. Appellant explained that after turning onto Brooklyn Avenue from King Street, he encountered the victim, O.D., and K.J. *See id.* at 323. According to Appellant, the victim, O.D., and K.J. were all wearing masks, and when they saw Appellant, each of

them drew a gun and they pointed their guns at Appellant. *See id.* at 303-04, 323. Appellant testified that as he tried to turn his bicycle around to flee, a shot was fired. *See id.* at 304, 324. Appellant then tried to get off of his bicycle, but he fell, and the bicycle landed on top of him. *See id.* at 304, 325-27. Appellant then drew his gun and returned fire. *See id.* at 304. Appellant began crawling backwards while shooting. *See id.* at 305, 307, 328-30. According to Appellant, once he was able to stand, he grabbed his bicycle and ran away while carrying it. *See id.* at 305, 330-31.

Appellant further testified that when he went to Q.M.'s house, Appellant and Q.M. went live on Instagram "to make it seem like [Appellant] was in the house all day[,]" and as if "nothing has [sic] happened." *Id.* at 307-08. At the conclusion of the trial, the jury convicted Appellant of both first-degree murder and possession of a firearm by a minor. *See* Verdict Sheet, 1/25/24.

On April 30, 2024, the trial court sentenced Appellant to a term of forty-five years to life imprisonment for first-degree murder and a concurrent sentence of one to twelve months' imprisonment for possession of a firearm by a minor. The trial court also ordered Appellant to pay $2,359.97 in restitution to V-Cap.[2] *See* Sentencing Order, 4/30/24. Subsequently, Appellant made an oral motion challenging the weight of the evidence. *See* N.T. Sentencing Hr'g, 4/30/24, at 18. Specifically, Appellant's counsel stated: "I need to at this point make an oral motion to preserve this for appeal, the

_____

[2] The Victims Compensation Assistance Program. *See Commonwealth v. Wright*, 276 A.3d 821, 822 (Pa. Super. 2022).

- 6 -

weight of the evidence as it concerns both -- the two charges[.]" ***Id.*** The trial court denied that motion without prejudice to present a more developed claim in a written post-sentence motion. ***See id.*** at 20. Appellant did not file any written post-sentence motions.

Appellant then filed a timely notice of appeal. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents six issues for our review, which we have reordered as follows:

1. Whether the trial court abused its discretion in denying Appellant's motion for judgement of acquittal at the conclusion of the Commonwealth's case-in-chief, on the basis that the Commonwealth failed to prove that Appellant was the actual person that committed the offenses of murder of the first degree and possession of a firearm by a minor.

2. Whether the evidence was insufficient to prove [Appellant] guilty beyond a reasonable doubt of first-degree murder where the Commonwealth failed to disprove [Appellant's] claim of self-defense because it could muster only weak circumstantial evidence that amounted to suspicion and conjecture?

3. Whether the trial court abused its discretion in denying [Appellant's] motion for decertification, because it violated juvenile's constitutional right against self-incrimination by requiring that he accept responsibility in order to demonstrate her amenability to treatment.

4. Whether the trial court abused its discretion and erred by granting the Commonwealth's motion [*in*] *limine* to permit the presentment of evidence at trial through social media posts and pictures regarding Appellant's alleged gang affiliation where the probative value of such evidence was minimal under the circumstances of the case and the unfair prejudice to Appellant was great.

5. Whether the trial court abused its discretion in permitting the Commonwealth to introduce the testimony of Officer Peter Fouad, as an expert witness in gang structure and organization.

6. Whether the trial court abused its discretion and erred when it gave a jury instruction on consciousness of guilt of flight and concealment.

Appellant's Brief at 8-9 (some formatting altered).[3]

## Motion for Judgment of Acquittal

Appellant argues that the trial court erred in denying his motion for judgment of acquittal. *Id.* at 41-43. Specifically, Appellant contends that "no evidence was provided to support the Commonwealth's assertion that Appellant shot and killed [the victim] in its case-in-chief. Although, there was video evidence of the shooting, Appellant cannot be seen on the video. None of the Commonwealth's witnesses testified at trial that Appellant shot [the victim]." *Id.* at 43.

Before reaching the merits of this claim, we must address whether the claim has been waived. *See Commonwealth v. Edmondson*, 718 A.2d 751,

_____

[3] Additionally, Appellant challenges the weight of the evidence. *See* Appellant's Brief at 44-46. As stated above, Appellant made an oral motion challenging the weight of the evidence at sentencing, which the trial court denied without prejudice to presenting a more developed weight claim in a written post-sentence motion. *See* N.T. Sentencing Hr'g, 4/30/24, at 18-20. Appellant did not file any written post-sentence motions. This Court has explained that "[a] boilerplate motion, either that 'the evidence was insufficient to support the verdict,' or that 'the verdict was against the weight of the evidence,'" will not preserve that claim for appeal because it "is not a 'precise statement of issues and grounds relied upon.'" *Commonwealth v. Rivera*, 238 A.3d 482, 497 (Pa. Super. 2020) (some formatting altered). Therefore, Appellant's boilerplate oral motion challenging the weight of the evidence did not preserved this claim for appeal, and it is waived. *See id.*

753 n.7 (Pa. 1998) (explaining that appellate courts may raise the issue of waiver *sua sponte*).

At the close of the Commonwealth's case-in-chief, the defendant may make a motion for a judgment of acquittal challenging the sufficiency of the Commonwealth's evidence. **See** Pa.R.Crim.P. 606(a)(1). A motion for judgment of acquittal was previously referred to as a "demurrer." **See id.**, Cmt. It is well-established that "when a defendant does not rest following denial of a demurrer, but instead presents a defense, the correctness of the ruling on the demurrer is not preserved for appellate review; the proper procedure is to challenge the sufficiency of the evidence." **Commonwealth v. Johnson**, 192 A.3d 1149, 1154 (Pa. Super. 2018) (citation omitted and some formatting altered); **see also Commonwealth v. Ilgenfritz**, 353 A.2d 387, 388 n.* (Pa. 1976) (noting that the defendant argued on appeal that "the trial court erred in not sustaining his demurrer to the evidence for lack of proof of cause of death[,]" but holding that because "the defendant did not rest following this adverse ruling, but elected to put in a case in defense, the correctness of the ruling on the demurrer is no longer an available issue" (citations omitted)).

Therefore, to the extent that Appellant challenges the sufficiency of the evidence presented in Commonwealth's case-in-chief, this issue is waived because Appellant presented evidence in support of a claim of self-defense. **See Johnson**, 192 A.3d at 1154; **see also Ilgenfritz**, 353 A.2d at 388 n.*.

**Sufficiency of the Evidence**

Appellant next challenges the sufficiency of evidence to sustain his conviction for first-degree murder. Appellant's Brief at 32-35. Specifically, Appellant argues that the Commonwealth failed to disprove his self-defense claim. *Id.* Appellant notes that he testified that three individuals approached him firing guns and that he shot back in self-defense. *Id.* at 35 (citing N.T. Trial, 1/24-25/24, at 304-05). Appellant contends that the Commonwealth did not present any evidence to disprove this claim. *Id.*

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the [defendant's] convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa. Super. 2019) (citation omitted and formatting altered). "Importantly, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* at 337 (citation omitted and some formatting altered).

Here, after careful consideration of the record, the parties' arguments, and the trial court's opinion, we affirm on the basis of the trial court's analysis of this issue. *See* Trial Ct. Op., 9/18/24, at 9-18. Specifically, we agree with the trial court that, when viewed in the light most favorable to the Commonwealth, there was sufficient evidence demonstrating that Appellant acted with the specific intent to kill.[4] *See id.*; *see also Sebolka*, 205 A.3d at 336-37. We note that one or two days prior to the shooting Appellant told Taylor-Williams that he intended to "smoke" the victim, which Taylor-Williams understood meant that Appellant was going to shoot the victim. *See* N.T. Trial, 1/22-23/24, at 338-39. Further, we agree with the trial court that the Commonwealth disproved Appellant's claim of self-defense through O.D.'s testimony, during which he stated that he was walking with the victim and K.J. before the shooting, that none of them were holding guns at the time,

---

[4] To the extent that Appellant argues that O.D. and K.J.'s trial testimony was inconsistent with the statements they gave to the police, that argument goes to the weight, not the sufficiency of the evidence. *See Commonwealth v. Kinney*, 157 A.3d 968, 971-72 (Pa. Super. 2017) (explaining that claims directed at the credibility of a witness's testimony "challenge the weight, not the sufficiency, of the evidence" (citation omitted)). As noted above, Appellant waived any weight-of-the-evidence claims because he failed to properly preserve them.

- 11 -

and that they immediately ran away when they heard gunshots. **See** N.T. Trial, 1/22-23/24, at 129. After the shooting, Appellant recorded a video of himself with Q.M. after the shooting in an attempt to make it seem as if Appellant had been at Q.M.'s house at the time of the shooting. **See id.** at 306-07; N.T. Trial, 1/24-25/24, at 307-08. Lastly, Appellant admitted to Taylor-Williams that he had "set [the victim] up" for the shooting and then fled afterwards. **See** N.T. Trial, 1/22-23/24, at 336-37. Therefore, Appellant is not entitled to relief on this claim.

**Decertification Petition**

Next, Appellant argues that the trial court erred in denying his Decertification Petition requesting that this matter be transfer to juvenile court. Appellant's Brief at 29-32. Specifically, Appellant contends that the trial court erred by considering Dr. Dattilio's report indicating that Appellant did not show remorse. **Id.** at 32. Appellant claims that the trial court's reliance on this factor infringed on his Fifth Amendment protection against self-incrimination. **Id.** at 29-32 (citing, inter alia, **Commonwealth v. Brown**, 26 A.3d 485, 494 (Pa. Super. 2011)). Lastly, Appellant argues that the trial court erred by concluding that there was insufficient time for him to be rehabilitated because he was seventeen-and-a-half-years-old even though Appellant's expert offered a contrary opinion. **Id.** at 32.

The Commonwealth responds that the trial court's January 18, 2023 order and opinion explaining its decision to deny Appellant's Decertification Petition is a legal nullity because it was entered after Appellant's petition was

denied by operation of law pursuant 42 Pa.C.S. § 6322(b). Commonwealth's Brief at 24-25. Therefore, the Commonwealth argues that "the trial court's consideration of [Appellant's] lack of remorse is a legal nullity and his appeal on this issue should not be heard on the merits." *Id.* at 25. The Commonwealth alternatively contends that the trial court did not err by denying the Decertification Petition. *Id.* at 25-34.

First-degree murder is one of the offenses enumerated in Section 6302 of the Juvenile Act which requires jurisdiction to vest in the criminal division instead of the juvenile division. *See* 42 Pa.C.S. §§ 6302(2)(i), 6355(e).

This Court has explained:

Decisions of whether to grant decertification will not be overturned absent a gross abuse of discretion. An abuse of discretion is not merely an error of judgment but involves misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment passed upon partiality, prejudice or ill will.

\* \* \*

When a case goes directly to the criminal division the juvenile has the option of requesting treatment within the juvenile system through the transfer process of decertification. In determining whether to transfer such a case from the criminal division to the juvenile division, "the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest." 42 [Pa.C.S.] § 6322(a).

Pursuant to § 6322(a), the decertification court must consider the factors contained in § 6355(a)(4)(iii) in determining whether the child has established that the transfer will serve the public interest.

*Commonwealth v. Ruffin*, 10 A.3d 336, 338 (Pa. Super. 2010) (some citations omitted and some formatting altered).

Further, "[w]hen evaluating the propriety of a [de]certification decision, absent evidence to the contrary, a reviewing court must presume that the [trial] court carefully considered the entire record." ***Commonwealth v. Jackson***, 722 A.2d 1030, 1034 (Pa. 1999). "If rehabilitation cannot be **assured** during the child's minority, the child has failed to establish that he was amenable to juvenile rehabilitation." ***Commonwealth v. Potts***, 673 A.2d 956, 958 (Pa. Super. 1996) (citation omitted and emphasis added).

This Court has held:

> The trial court, . . . interpreted and applied 42 Pa.C.S.[] § 6355(a)(4)(iii)(G) to effectively require [the defendant] to admit and discuss his involvement in the actions constituting the criminal offenses. [T]he trial court's application of 42 Pa.C.S.[] § 6355(a)(4)(iii)(G) violated [the defendant's] rights against self-incrimination by, in essence, concluding that [the defendant] had to admit guilt to prove amenability to treatment and obtain transfer to juvenile court.

***Brown***, 26 A.3d at 498 (footnote omitted).

The ***Brown*** Court concluded that "the trial court found that [the defendant] failed to establish amenability to treatment based on the fact that [the defendant] did not admit guilt or accept responsibility for his actions. The trial court's reliance on this impermissible factor violated [the defendant's] Fifth Amendment rights, and tainted the entire decertification proceedings." ***Brown***, 26 A.3d at 510. "It is clear from our review of the record that a pivotal component of the trial court's analysis rested on an unconstitutional basis." ***Id.*** Therefore, this Court vacated the order denying decertification and remanded for a new decertification hearing. ***See id.***

- 14 -

First, we address the Commonwealth's claim that the trial court's January 18, 2023 order and opinion is a legal nullity, and that this Court should not rely on its reasoning. As stated above, Appellant's Decertification Petition was denied by operation of law on December 20, 2022. *See* 42 Pa.C.S. § 6322(b). In its January 18, 2023 opinion, the trial court acknowledged that Appellant's Decertification Petition had previously been denied by operation of law, but explained that the opinion was issued in support of that denial. *See* Trial Ct. Op. & Order, 1/18/23, at 6-7. Further, the trial court incorporated the reasoning set forth its January 18, 2023 opinion and order in its Rule 1925(a) opinion. *See* Trial Ct. Op., 9/18/24, at 7. In cases where a defendant's post-sentence motion has been denied by operation of law, this Court has considered the trial court's reasons for that denial included in a Rule 1925(a) opinion. *See, e.g.*, *Commonwealth v. Knox*, 50 A.3d 732, 738 (Pa. Super. 2012) (examining the trial court's Rule 1925(a) opinion discussing the defendant's weight-of-the-evidence claim and trial court's reasons for allowing the defendant's post-sentence motion to be denied by operation of law). Therefore, this Court will review the trial court's analysis in support of the denial of Appellant's Decertification Petition set forth in the trial court's January 18, 2023 opinion and incorporated by reference into the trial court's Rule 1925(a) opinion. *See generally id.*

Here, after careful consideration of the record, the parties' arguments, and the trial court's opinion, we affirm on the basis of the trial court's analysis of this issue. *See* Trial Ct. Op. & Order, 1/18/23, at 3-18. Specifically, we

- 15 -

agree with the trial court that Appellant failed to establish by a preponderance of the evidence that transferring his case to the juvenile division would serve the public interest. *See id.* at 9-18; *see also* 42 Pa.C.S. § 6322(a); *Ruffin*, 10 A.3d at 338.

Further, we disagree with Appellant's contention that the trial court violated Appellant's rights against self-incrimination by relying on Dr. Dattilio's conclusion that Appellant failed to show remorse when denying Appellant's Decertification Petition. Specifically, Dr. Dattilio testified that Appellant did not express any remorse. *See* N.T. Hr'g, 11/30/22, at 93. He further explained that in instances where he has examined someone who killed in self-defense, he has usually seen the person express remorse for taking another person's life. *See id.* at 93, 103. Dr. Dattilio opined that remorse was an important factor in assessing rehabilitation and amenability to treatment because it demonstrates whether a person has the ability to put themselves in the another's place, particularly the decedent's family. *See id.* at 93-94. Also, Dr. Dattilio testified that when he specifically asked Appellant how he felt "about the fact that someone died," Appellant responded that it was a matter of self-defense and that while he was sorry about the situation, he was not sorry for the victim. *See id.* at 102. Based on the foregoing, we conclude that the trial court's reliance on Appellant's lack of remorse related to remorse that a person had died and the trial court did not require Appellant to admit guilt to prove his amenability to treatment. Therefore, we conclude that the trial court did not abuse its discretion and did not violate Appellant's

Fifth Amendment rights. *See Ruffin*, 10 A.3d at 338; *Brown*, 26 A.3d at 498, 510. Accordingly, Appellant is not entitled to relief on this claim.

**Evidence of Gang Affiliation**

Appellant's next two issues are related; therefore, we discuss them together. Appellant argues that the trial court erred in admitting evidence of and expert testimony[5] regarding Appellant's gang affiliation. Appellant's Brief at 35-39. Specifically, Appellant contends that this evidence was inadmissible because the Commonwealth failed to show a nexus between Appellant's social media posts which Officer Fouad opined were indicative of gang affiliation and the instant shooting. *Id.* at 36-37. Appellant claims that this evidence portrayed Appellant as a gang member with a propensity for violence and he was prejudiced by its admission. *Id.* at 37-39.

Here, after careful consideration of the record, the parties' arguments, and the trial court's opinion, we affirm on the basis of the trial court's analysis of this issue. *See* Trial Ct. Op., 9/18/24, at 18-21. Specifically, we agree with the trial court that evidence of Appellant's gang affiliation was relevant to the history of Appellant and the victim leading up to the homicide. *See id.* at 19-21. Therefore, we conclude that the trial court did not abuse its

---

[5] The trial court interpreted Appellant's claim related to Officer Fouad's expert testimony about gang structure and organization as a challenge to the trial court's decision to recognize Officer Fouad as an expert in that field. *See* Trial Ct. Op., 9/18/24, at 21-23. However, it is clear from Appellant's brief that he is not challenging Officer Fouad's qualifications as an expert, but is instead challenging the admission of that testimony for the same reasons he is challenging the admission of the other evidence of gang affiliation and gang-related activity. *See* Appellant's Brief at 35-39.

discretion in concluding that the probative value of this evidence outweighed the danger of unfair prejudice, and Appellant is not entitled to relief on this claim.

## Jury Instructions

Next, Appellant argues that the trial court erred by instructing the jury that Appellant's flight and concealment could be considered as evidence of consciousness of guilt. Appellant's Brief at 39-41. Appellant does not dispute that he left the scene after the shooting but contends that the Commonwealth never established that he knew he was wanted for a crime. *Id.* at 39-40. Appellant concludes that a reasonable jury could not conclude that he "was concealing himself to evade police[,]" and therefore, the consciousness of guilty jury instruction was not supported by the evidence. *Id.* at 41.

In reviewing a challenge to jury instructions,

> our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (citations omitted); *see also Commonwealth v. Sattazahn*, 952 A.2d 640, 668 n.20 (Pa. 2008) (noting that trial courts have wide latitude when crafting jury instructions).

- 18 -

Moreover, this Court has held that a trial court may instruct a jury that a defendant's flight from police may be considered as consciousness of guilt. **See Commonwealth v. Lukowich**, 875 A.2d 1169, 1173-74 (Pa. Super. 2005) (upholding trial court's instruction on the defendant's flight and explaining that "where evidence exists that a defendant committed a crime, knew he was wanted, and fled or concealed himself, such evidence is admissible to establish consciousness of guilt" (citation omitted)).

Here, after careful consideration of the record, the parties' arguments, and the trial court's opinion, we affirm on the basis of the trial court's analysis of this issue. **See** Trial Ct. Op., 9/18/24, at 23-26. Specifically, we agree with the trial court that there was evidence that Appellant had been hiding from the police following the shooting, which supported giving a flight as consciousness of guilt instruction as part of the jury charge. **See id.**; **see also Thomas**, 904 A.2d at 970. Therefore, Appellant is not entitled to relief on this claim.

**Restitution**

Finally, we must address the legality of the restitution order. **See Wright**, 276 A.3d at 827 (noting that questions regarding the legality of the sentence questions "are not waivable and may be raised *sua sponte* on direct review by this Court" (citation omitted and formatting altered)). Our Supreme Court stated that "a challenge to the sentencing court's authority to order restitution raises a non-waivable legality of sentencing issue." **Commonwealth v. Weir**, 239 A.3d 25, 37 (Pa. 2020). A challenge to the

legality of the sentence "presents a pure question of law. As such, our scope of review is plenary and our standard of review *de novo*." **Wright**, 276 A.3d at 827 (citations omitted and formatting altered).

Section 1106 of the Crimes Code provides in relevant part:

**(a) General rule.**—Upon conviction for any crime wherein

(1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or

(2) the victim, if an individual, suffered personal injury directly resulting from the crime,

the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

\* \* \*

**(c) Mandatory restitution.—**

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other government agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. . . .

\* \* \*

(2) **At the time of sentencing the court shall specify the amount and method of restitution**. In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the

district attorney . . . and such other matters as it deems appropriate.

(ii) **May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just**.

18 Pa.C.S. § 1106(a), (c)(1)(i), (c)(2)(i)-(ii) (emphases added).

This Court has previously stated that a sentencing court's failure to specify the amount and method of restitution at the time of sentencing "results in an illegal sentence" because restitution was not properly included in the sentence and, as such, the defendant was not provided "with certainty as to his sentence[.]" ***Commonwealth v. Royal***, 312 A.3d 317, 325 (Pa. Super. 2024) (citations omitted and formatting altered). The ***Royal*** Court vacated the judgment of sentence, and remanded for resentencing for the trial court to reimpose restitution and specify, on the record, the method of payment. ***Id.*** at 326.

Here, the trial court properly ordered Appellant to pay $2,359.97 to V-Cap. ***See*** Sentencing Order, 4/30/24. However, the trial court did not specify at the sentencing hearing nor in its written sentencing order the **method** of payment for the restitution, whether it be in a lump sum, by monthly installments, or according to such other schedule as the trial court deemed just. ***See id.***; N.T. Sentencing, 4/30/24, at 14-17.

Therefore, we are constrained to conclude that the trial court's restitution order is an illegal sentence because it did not specify the method

of payment at the sentencing hearing as required by 18 Pa.C.S. § 1106(c)(2), nor in the sentencing order. *See Royal*, 312 A.3d at 326.

For these reasons, we affirm Appellant's convictions,[6] affirm the judgment of sentence in part, and vacate the judgment of sentence as to restitution only. We remand for resentencing limited to the reimposition of $2,359.97 in restitution and an on-the-record specification of the method of payment.

Judgment of sentence affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/22/2026

---

[6] The parties are directed to attach a copy of the trial court's opinions in the event of further proceedings.